[No. G012217. Fourth Dist., Div. Three. Jan. 31, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.,
DUNG VAN MAI, Defendant and Appellant.

**COUNSEL**

Martin Nebrida Buchanan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Esteban Hernandez, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**CROSBY, J.**—Convicted of first degree murder in the shooting death of his accomplice during a robbery gone awry, Dung Van Mai complains of the trial court's failure to modify CALJIC No. 8.12, challenges the constitutionality of CALJIC No. 2.90, and attacks the sufficiency of the evidence to support one of four convictions for attempted robbery. We agree CALJIC No. 8.12 is deficient in several respects and the court should have modified it as requested by the defense. But, finding no prejudice or other error, we affirm.

I

Posing as customers, Mai and Bao Lau browsed in 62-year-old Li Thi Nguyen's fabric store for approximately 15 minutes. Then Mai grabbed Nguyen, placed a gun to her head, and dragged her toward the back office where her son, Quy Doc Nguyen, operated a gold business. Present in the office with Quy Doc were his brother, Thanh Quoc Nguyen, and Thanh Quoc's nephew, Khoa Anh Nguyen. Three loaded handguns were hidden in the room, and the safe held the morning's sizable gold purchase.

Mai and Nguyen entered the office, followed by Lau, who also brandished a pistol. Mai threatened to shoot all the victims. He hit and kicked Thanh Quoc and ordered him to lie on the floor. He roughly threw Nguyen, whom he had been striking with the handgun, on top of her son and then forced Quy Doc to lie on top of his mother and brother. Lau, in the meantime, ordered Khoa Anh to the floor and continued to display his weapon.

At Mai's direction Lau left the office and returned with two duffel bags. He extracted duct tape from one and taped Nguyen's mouth, but immediately removed the tape. He then began to tape Khoa Anh's hands behind his back.

As Mai continued to hit Nguyen, Thanh Quoc suddenly stood up, grabbed the robber's gun hand, and yelled for his brother to arm himself. Quy Doc retrieved a nine millimeter semiautomatic weapon from the desk, pushed the alarm button, and assumed a firing posture.

According to Quy Doc, Lau then fired at him. The shot missed, but Quy Doc's return volley mortally wounded Lau. Quy Doc redirected his aim as Mai struggled with Thanh Quoc. He fired several rounds, wounding and disarming Mai.

Mai was charged with Lau's murder, four counts of attempted robbery, and false imprisonment of Nguyen. A prior serious felony was also alleged.

The defense did not dispute the attempted robbery charges.[1] The false imprisonment count was defended in a matter-of-fact fashion.[2] The prior serious felony allegation was bifurcated and tried to the court after the jury was dismissed.

Both sides devoted considerable energy to the murder count, however. Because Lau was killed by one of the victims, Mai's criminal culpability for the accomplice's death was based on the provocative act doctrine. Court and counsel discussed various Supreme Court decisions from which the doctrine evolved (e.g., *People* v. *Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130]; *People* v. *Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365]; *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578 [91 Cal.Rptr.

---

[1] In his closing argument, defense counsel stated, "As to the robberies, my client is guilty of those attempted robberies. There is no doubt about it. Counts one through four, the attempted 211s, guilty as sin. We're not up here debating those charges to you. . . . [¶] . . .We haven't disputed those charges from the beginning of this case."

[2] For example, in closing argument, defendant's attorney remarked that the false imprisonment statute was "a little bit vague and it doesn't tell you how long somebody has to be restrained. . . . But you folks go back and decide that count. There really isn't anything I can say about that."

275, 477 P.2d 131]; *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43]; *In re Joe R.* (1980) 27 Cal.3d 496 [165 Cal.Rptr. 837, 612 P.2d 927]; *People* v. *Caldwell* (1984) 36 Cal.3d 210 [203 Cal.Rptr. 433, 681 P.2d 274]) and agreed CALJIC No. 8.12, the standard instruction in cases where the killer of a felony accomplice is someone other than the coperpetrator of the crime, was deficient for failing to address the proximate cause question.[3] A lengthy chambers meeting focused on that point and several others, including defense suggestions for additional instructions.

Mai's counsel proposed a modest modification to CALJIC No. 8.12 (the insertion, in two places, of the words "life endangering" to modify "provocative act") and a series of special instructions designed to advise the jury that a provocative act must be both life threatening—something more than the force and threat that is part and parcel of an armed robbery—and the proximate cause of the killing. Mai's attorney also argued, "the jury should be instructed not to—that they should not consider any provocative acts of the dead person in attaching criminal liability to the one surviving accomplice."[4]

Ultimately, the judge rejected the special instructions proposed by defense counsel and announced he would modify CALJIC No. 8.12 by advising the jurors the prosecution was also required to prove "the provocative act was the proximate cause of death. To be considered a proximate cause of [Lau's]

---

[3]CALJIC No. 8.12 reads, "[Defendant is accused in [Count[s] ____ of] the information of having committed the crime of murder, a violation of Penal Code section 187.] [¶] Every person who unlawfully kills a [human being] . . . with malice aforethought is guilty of the crime of murder in violation of Section 187 of the Penal code. [¶] A homicide committed during the commission of a crime by a person who is not a perpetrator of such crime, in a reasonable response to an intentional provocative act by a perpetrator of the crime, is considered in law to be an unlawful killing by the perpetrator[s] of the crime. Malice is implied when the provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life. [¶] 'Aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the provocative act. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. The crime of ____ [or] [attempted ____] was committed; [¶] 2. During the commission of such crime, a person committing the crime also intentionally committed a provocative act; [¶] 3. The provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life; and [¶] 4. Such act was sufficiently provocative that [the victim of the ] [a peace officer] [another person not a perpetrator of the crime of ____] in a reasonable response thereto killed [a perpetrator of such crime] [another person] [a fetus]. [¶] [Murder, which occurs during the commission or attempt to commit the crime of ____, when there was in the mind of the perpetrator[s] of such crime, the specific intent to commit ____, is murder of the first degree.] [¶] [Murder which is not of the first degree is murder of the second degree.] [¶] [If you find that the crime of murder was committed, you must find it to be murder of the second degree.]"

[4]The defense did not actually lodge a written proposal dealing with this point. Nevertheless, based on the extensive discussion in the record, we will deem one to have been submitted.

death, the acts of the defendant Mai must have been a 'substantial factor' contributing to the result." While defense counsel objected on the basis the modification "deals with the joint action of [Lau] and Mai, and that goes back to the argument that I've already talked about basically, that I don't think that's a correct statement of the law," he agreed the standard proximate cause instruction, CALJIC No. 3.41,[5] could not "be more tailored to fit what we need it for." Accordingly, that instruction was read immediately after CALJIC No. 8.12.

Defendant was convicted of all charged crimes. The enhancement was found to be true.

## II

Mai launches a several-pronged attack against CALJIC No. 8.12, the standard instruction in murder prosecutions where the decedent is killed during the perpetration of a felony and the killer is someone other than the decedent's accomplice. Although Supreme Court opinions treating with the provocative act doctrine span a 28-year period, we have not discovered an appellate decision that has delved into the why's and wherefore's of CALJIC No. 8.12. We will find, however, that the instruction has not kept up with the times and is deficient in three respects: It fails to define "provocative act" in plain English as conduct highly likely to result in death, to advise jurors to disregard any provocative act by the decedent in assessing defendant's criminal culpability, and to adequately explain that the provocative act of defendant or a surviving cofelon must be a substantial factor in the killing.[6]

## A

Mai attacks the failure of CALJIC No. 8.12 to define provocative act and the trial court's refusal to do so in traditional implied malice language, e.g., that a provocative act is intentional conduct whose natural

---

[5]CALJIC No. 3.41 as given provides, "There may be more than one proximate cause of the death. When the conduct of two or more persons contributes concurrently as the proximate cause of the death, the conduct of each is a proximate cause of the death if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the time of the death and acted with another cause to produce the death. [¶] If you find that the defendant's conduct was a proximate cause of death to another person, then it is no defense that the conduct of some other person, even the deceased person, contributed to the death."

[6]The third deficiency receives little attention in this opinion because the trial judge corrected it by advising the jurors the provocative act must be "the proximate cause of death. To be considered a proximate cause of [decedent's] death, the acts of the defendant [ ] must have been a substantial factor contributing to the result." (See *People v. Caldwell, supra*, 36 Cal.3d at p. 220.)

consequences are dangerous to life, committed with conscious disregard for life. (See, e.g., CALJIC No. 8.11; *People* v. *Dellinger* (1989) 49 Cal.3d 1212 [264 Cal.Rptr. 841, 783 P.2d 200].) The Attorney General dismisses the contention with the following assertion: "[T]here are two different standards regarding what constitutes provocative conduct. The first standard is enunciated in *Taylor* v. *Superior Court, supra,* 3 Cal.3d [at p.] 583: '[T]he central inquiry in determining criminal liability for a killing committed by a resisting victim or police officer is whether the *conduct* of a defendant or his accomplices was sufficiently provocative of lethal resistance to support a finding of implied malice.' The second standard refers to a 'life threatening act' on which liability is premised. (*In re Joe R., supra,* 27 Cal.3d at p. [505].) In looking at the two standards to determine which definition of provocative conduct it should apply, the trial court[,] guided by *People* v. *Superior Court* (*Bennett*) [1990] 223 Cal.App.3d [1166,] 1172 [273 Cal.Rptr. 71], properly chose to follow the *Taylor* standard."

But *Taylor* and *Joe R.* do not set forth two competing standards, as the Attorney General claims.[7] Rather, those decisions discuss two discrete elements of the provocative act doctrine. The first is whether a surviving cofelon intentionally committed a life-threatening act; the second is whether that act reasonably provoked lethal resistance by a victim, the police, or a bystander.

We have encountered no Supreme Court opinion discussing the provocative act doctrine in terms other than life-endangering conduct. █ And that is to be expected: Unlike the felony-murder rule which holds a felon strictly liable for a killing he or she—or a surviving accomplice—commits during the perpetration or attempt to perpetrate particular crimes, an element of the provocative act doctrine is implied malice. When the doctrine was still nascent, the Supreme Court wrote, "Except when the common law felony-murder doctrine is applicable, an essential element of murder is an intent to kill or an intent with conscious disregard for life to commit acts likely to kill." (*People* v. *Washington, supra,* 62 Cal.2d at p. 780.) Several months later, the Supreme Court formulated the "principles [to] be invoked to convict a defendant of first degree murder for a killing committed by another." (*People* v. *Gilbert, supra,* 63 Cal.2d at p. 704.) The first element was "*Proof of malice aforethought.* . . . Such malice is implied under Penal Code section 188 when the defendant or his accomplice for a base, antisocial

---

[7]The Attorney General's reliance on *People* v. *Superior Court* (*Bennett*) (1990) 223 Cal.App.3d 1166 [273 Cal.Rptr. 71] for this notion is somewhat baffling. The *Bennett* court's quotations from *Taylor* and *Joe R.* both equated "provocative act" with life-threatening conduct. More to the point, the appellate panel in Bennett was not concerned with jury instructions; it simply issued a pretrial writ of mandate directing the superior court to vacate an order granting defendant's Penal Code section 995 motion to set aside the information.

motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death." (*Ibid.*, internal quotation marks omitted.) In other words, it is a life-endangering act by a defendant or surviving cofelon that supplies the requisite implied malice to support a murder conviction.

Every other Supreme Court opinion treating with the provocative act doctrine has reaffirmed that implied malice based on life-threatening conduct is one of its underpinning principles. In *Taylor* v. *Superior Court, supra,* 3 Cal.3d at page 583, the court determined there was probable cause to charge a getaway driver with murder under the provocative act doctrine: "[I]f petitioner were an accomplice to the robbery, he would be vicariously responsible for any killing attributable to the intentional acts of his [surviving] associates committed with conscious disregard for life, and likely to result in death. We must determine whether the committing magistrate had any rational ground for believing that [the accomplice's] death was attributable to intentional acts of [the codefendant] meeting those criteria." (Fn. omitted.)

The Supreme Court reversed a provocative act murder finding where there was no evidence of "life-threatening acts on [the minor's] part other than those implicit in the crime of armed robbery." (*In re Joe R., supra,* 27 Cal.3d at p. 503.) By contrast, in *People* v. *Caldwell, supra,* 36 Cal.3d at page 216, a similar attack on two murder convictions under the doctrine failed after the court determined there was substantial evidence to support the findings that defendants committed " 'acts . . . which were likely to cause death' " and that those acts proximately caused the accomplice's death. (*Id.* at p. 217.)

Most compelling on this point, however, is *People* v. *Antick, supra,* 15 Cal.3d 79. There, the Supreme Court reproduced in a footnote the jury instruction based on the provocative act doctrine and remarked the instruction was "based on *Taylor* [and] provided: 'When the accomplice of the defendant, with a conscious disregard for life, intentionally commits an act that is *likely to cause death,* and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. [¶] Therefore, if the defendant is guilty of the burglary he is vicariously responsible for any killing attributable to the intentional act of his co-burglar committed with conscious disregard for life and *likely to result in death.*' " (*Id.* at p. 86, fn. 7, italics added.)

In short, the instruction given in *Antick,* which the Supreme Court recognized as *Taylor*-based, is very similar to the plain-speaking definition of

implied malice found in the current version of CALJIC No. 8.11:[8] "Malice is implied when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." The drafters of CALJIC No. 8.12 succumbed to legalese, unfortunately; and the definition of implied malice in that stock instruction ("Malice is implied when the provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.") conveys a considerably less vivid picture to a layperson.

■ Although we conclude the definitions of implied malice and provocative act in CALJIC No. 8.12 are deficient and should be revised to include the language in the *Antick* instruction or that found in CALJIC No. 8.11, the error in refusing to modify the standard instruction was harmless. We have carefully reviewed the closing arguments and are satisfied both counsel conveyed the proper life-threatening standard to the jury.

While the prosecutor focused more on the reasonableness of the victims' lethal response and never said a guilty verdict must hinge on life-threatening conduct by Mai, he mentioned on more than a few occasions that defendant's acts were precisely that. He noted, for example, that defendant "kept aggravating the situation, aggravating it, hitting, kicking, you know, bad language, threats, to the point where [the victims] finally crack. They figured doom was imminent"; "This guy [Mai] did everything possible to convey that he was going to kill him [*sic*], or at least they believed that"; "Just imagine some nut coming in [to your office] with a crazed look and reiterating over and over that he's going to kill you or somebody's going to get their head blown off, waving a gun, pistol whipping. You know, if we took one of those acts, just the pistol whipping and one threat to kill, is that enough to evoke [*sic*, provoke?] But here you've got just time and time again, Mr. Mai kept provoking"; and "Was [Quy Doc] unreasonable to think when he heard his mom there quivering and watch[ed] this maniac strike him and denigrating her and them and telling them at every chance he could that he was going to kill him? Did he have any reason to believe that's not what was going to happen?"

As the trial judge said he could, defense counsel argued the provocative act doctrine required a "life-endangering act, that doing [of] something that has a conscious disregard for human life." He added, "What the law says is when you use that force, fear, intimidation, that's part of your robbery.

[8]The prosecution initially asked that CALJIC No. 8.11 be given, but then withdrew the request. The trial judge's handwritten note stated in part, "covered in 8.12."

You've got to go beyond, though, [to] life-endangering to find this provocative act. [¶] The provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life." Arguing in his client's defense, counsel stressed that Mai did nothing "in a conscious disregard for human life over and above what's required for the armed robbery in this case."

But on the evidence presented, the jury was certainly entitled to believe Mai committed life-endangering acts. He appeared to be in control of the robbery, verbally threatened to kill, repeatedly struck the elderly Nguyen about the head with his gun, and forced her and her sons into execution positions on the floor. Even had the jury been properly instructed that Mai's guilt depended solely on his own commission of acts likely to result in death (or those of a surviving codefendant in an appropriate case), we are convinced the result would have been no different.

B

The second and third deficiencies in CALJIC No. 8.12 relate to proximate cause. As the Supreme Court remarked in *Pizano* v. *Superior Court* (1978) 21 Cal.3d 128, 138 [145 Cal.Rptr. 524, 577 P.2d 659], "Proximate cause problems in criminal cases cannot be solved by applying a simple rule-of-thumb applicable to every conceivable fact situation." This observation is particularly apt where the provocative act doctrine is implicated because the trier of fact will always be confronted with a chain of events involving at least three—but often more—individuals: By definition, the doctrine cannot apply unless there are two or more cofelons and the provocative acts by those who survive are sufficiently egregious to provoke a lethal response by a victim, police officer, bystander, or some combination of the foregoing. But in the typical case, as here, the accomplice who is killed also engaged in provocative conduct. This means there are usually several layers of proximate cause analysis in provocative act murder cases. One is whether the defendant engaged in provocative conduct that can fairly be labeled as a proximate cause of an accomplice's death. Another (albeit not present in this instance) is whether a surviving cofelon engaged in provocative conduct that can fairly be labeled as a proximate cause of an accomplice's death. If so, then even when the defendant on trial did not participate in the provocative act, he or she is nevertheless vicariously liable for the surviving accomplice's conduct and may be convicted of murder in the death of the accomplice who is killed.[9] A third is whether the decedent caused his own demise by engaging in provocative conduct.

[9]The following is an example: A, B, and C comprise a three-person bank robbery team. A, the unarmed getaway driver, sits behind the wheel of a car idling at the curb. B is also

But CALJIC No. 8.12 says nothing concerning proximate cause. The superior court and trial counsel, recognizing the oversight, agreed to modify the standard instruction by borrowing language from *People v. Caldwell, supra,* 36 Cal.3d at page 220 and advising the jurors the provocative act must be "the proximate cause of death. To be considered a proximate cause of [decedent's] death, the acts of the defendant Mai must have been a substantial factor contributing to the result." Also, because there was evidence that both defendant and his deceased cofelon engaged in provocative conduct, the court gave CALJIC No. 3.41.

▮ Despite these modifications, Mai claims the court's refusal to further modify CALJIC No. 8.12 or to give a special instruction advising the jurors not to consider Lau's own provocative acts in determining defendant's guilt constituted prejudicial error compelling reversal. In *People v. Antick, supra,* 15 Cal.3d 79, the Supreme Court disavowed the "too broad" holding in *Taylor v. Superior Court, supra,* 3 Cal.3d 578 and announced the provocative conduct of a cofelon who is killed by a victim or the police is "not relevant to the determination of whether his killing was, in fact, a murder for which his accomplices could be held responsible." (*People v. Antick, supra,* at p. 92, fn. 12; see also *Pizano v. Superior Court, supra,* 21 Cal.3d at p. 138, fn. 3.) As mentioned above, however, in many murder prosecutions under the provocative act doctrine, the evidence reveals that the now-deceased accomplice also engaged in provocative conduct. A trial court should instruct that this evidence is "not relevant to the [guilt] determination."

Although the court refused to so instruct here, we find no prejudice to Mai. The jury was told defendant's guilt depended on *his own* commission of provocative acts that proximately resulted in the accomplice's killing. That, and the addition of CALJIC No. 3.41, ensured that Mai would be neither convicted nor exonerated based on any provocative conduct by Lau.

Moreover, both counsel argued to the jury that Lau's provocative act in firing the first shot could not be a basis for a guilty verdict. Defense counsel, for example, urged, "The problem is that's a provocative act by Mr. [Lau], that killed himself. You can't use that as a provocative act to convict my client because my client didn't do that. Mr. [Lau] did that. Mr. [Lau] did that and it killed himself." While conceding decedent committed a provocative

---

unarmed; his role is to carry the loot from the bank. C is the armed mastermind. B and C succeed in liberating a heavy sack of currency from a teller. As they flee the bank, however, C opens fire on the security guard. The security guard shoots back, killing B. A is apprehended before he is able to put the car in gear. Even though A engaged in no life-endangering conduct (e.g., shooting or dangerous, high-speed driving), he is vicariously responsible for C's provocative act. He and C may be convicted of murder in B's death. (See also *Taylor v. Superior Court, supra,* 3 Cal.3d 578.)

act in shooting at Quy Doc, the prosecutor focused on life-threatening and dangerous conduct by Mai and argued that precipitated the gun battle. The jury was entitled to believe that Mai's acts set the victims' uprising into motion and Lau's firing of his gun was merely an inevitable part of the chain reaction that led to his death. It is not reasonably probable defendant would have achieved a more favorable result even if perfect instructions had been given.

## III

Defendant also attacks the giving of CALJIC No. 2.90, the standard reasonable doubt instruction, in the wake of the United States Supreme Court's grant of certiorari in *Sandoval* v. *California*, certiorari granted September 28, 1993, __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40]. We reject his argument under the compulsion of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]. (See *People* v. *Webb* (1993) 6 Cal.4th 494, 531 [24 Cal.Rptr.2d 779, 862 P.2d 779]; *People* v. *Jennings* (1991) 53 Cal.3d 334, 385 [279 Cal.Rptr. 780, 807 P.2d 1009], cert. den. __ U.S. __ [116 L.Ed.2d 462, 112 S.Ct. 443].)

## IV

In a final makeweight argument, Mai challenges the sufficiency of the evidence concerning the attempted robbery of Khoa Anh Nguyen, contending the prosecution never established this victim was in "joint possession" of the gold in Quy Doc's office. Noting defense counsel conceded Mai's guilt of all the attempted robbery charges in argument (see fn. 1, *ante*), the Attorney General responds only that defense counsel's tactical decision was a waiver of the right to attack the conviction on appeal.

Rather than become embroiled in the question of whether trial counsel had a legitimate reason for his concession, it is simpler to deal with the issue. Assuming the nephew was no more than a visitor to the business premises and neither owned nor possessed the gold, once force and fear were applied to him in an attempt to deprive *someone, or anyone*, of property, Khoa Anh became the victim of an attempted robbery. (See, e.g., *People* v. *Arline* (1970) 13 Cal.App.3d 200 [91 Cal.Rptr. 520].) A robbery consists of the application of force or fear to obtain the property of another. The victim need not own, possess, or even have the right to possess the property sought by the perpetrator.

Judgment affirmed.

Wallin, Acting P. J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 1994. Mosk, J., was of the opinion that the petition should be granted.