Filed 8/22/24  P. v. Calhoun CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAREST MARCUS CALHOUN,<br><br>    Defendant and Appellant. | B332567<br><br>(Los Angeles County<br>Super. Ct. No. TA073433) |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, a jury convicted Darest Calhoun of, among other crimes, the murder of his accomplice during a robbery. Years later, Calhoun petitioned for resentencing under Penal Code section 1172.6,[1] which limited accomplice liability for murder. The trial court denied the petition without holding an evidentiary hearing, finding that Calhoun was convicted of murder under the provocative act doctrine, which requires a defendant to personally harbor malice. On appeal, Calhoun contends that the instructions nonetheless improperly allowed malice to be imputed to him. We disagree and affirm the order.

## BACKGROUND

I.    Evidence from Calhoun's trial[2]

Calhoun and David Wilson robbed a restaurant operated by Rosalio and Estela Corona.[3] Wilson pointed a gun at Rosalio and demanded money, which Rosalio gave to him. At Calhoun's demand, Wilson gave the gun to Calhoun, who demanded more money and forced Rosalio into the kitchen at gunpoint, where a struggle over a butcher knife ensued. Calhoun twice shot at Rosalio and then at Estela, who had come into the kitchen during

---

[1]    All further statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[2]    We have granted the People's request for judicial notice of the appellate record in *People v. Calhoun* (Nov. 21, 2006, B183242) [nonpub. opn.]. (Evid. Code, § 452, subd. (d).)

[3]    To avoid confusion, we refer to the Coronas by their first names.

the struggle. Calhoun also hit Rosalio on the head with the gun and threatened to kill him. Rosalio and Estela were not hit by the shots.

People in a car parked across the street from the restaurant witnessed some of these events. One saw Calhoun and Rosalio fighting and Wilson go to help Calhoun. A witness saw Wilson exit the restaurant holding his shoulder. Wilson tried but was unable to open the door to the car that he and Calhoun had arrived in. Wilson stumbled down the street, asking for help, saying, " 'I been hurt.' " Calhoun then left the restaurant, shot at the witnesses' car, and ran away.

Law enforcement found a bloodied butcher knife in the kitchen. Tracing the path Wilson took, they found him lying in the street and bleeding from a stab wound from which he died.

## II. The charges, verdict, and sentence

Calhoun was charged with the murder of Wilson (§ 187, subd. (a); count 1), the attempted murder of Estela (§§ 664, 187, subd. (a); count 2), the attempted murder of Rosalio (§§ 664, 187, subd. (a); count 3), robbery (§ 211; count 4), shooting at an occupied vehicle (§ 246; count 5), assault with a firearm (§ 245, subd. (a)(2); counts 6 & 7), and possession of a gun by a felon (§ 12021, subd. (a); count 8). The information also alleged personal gun use allegations under section 12022.53, subdivisions (b) and (c) as to counts 1, 3, and 4 and under sections 1203.06, subdivision (a)(1) and 12022.5, subdivision (a)(1) as to counts 6 and 7.

As to the murder count, the trial court instructed the jury on provocative act murder under CALJIC No. 8.12. The trial court did not instruct on felony murder or the natural and probable consequences doctrine.

3

A jury found Calhoun guilty as charged, except it deadlocked on counts 2 and 5. The trial court declared a mistrial on those counts. The trial court sentenced Calhoun to "70 years to life," but after a different panel of this division reversed the true finding on the section 12022.53, subdivision (c) gun enhancement (*People v. Calhoun*, *supra*, B183242), the trial court resentenced Calhoun to 50 years to life.

III. Section 1172.6 proceedings

In 2022, Calhoun petitioned for resentencing under section 1172.6.[4] The trial court appointed counsel for Calhoun. The People opposed the petition on the ground that Calhoun's jury was not instructed on felony murder or the natural and probable consequences doctrine but was instructed on provocative act murder, which required the jury to find Calhoun personally harbored malice. In support of the opposition, the People submitted the opinion affirming in part and reversing in part the judgment of conviction on direct appeal, the jury instructions from Calhoun's trial, the verdicts on the murder and attempted murder counts, and the opinion affirming the denial of Calhoun's prior section 1172.6 petition.

On July 21, 2023, the trial court denied the petition on the ground that Calhoun was convicted of murder under the

---

[4] Calhoun had previously filed a petition for resentencing, which the trial court summarily denied without appointing counsel. On appeal, a different panel of this division, with one justice dissenting, affirmed on the ground that the record of conviction established he was ineligible as a matter of law because provocative act murder requires a finding of malice. (*People v. Calhoun* (Oct. 9, 2020, B296956) [nonpub. opn.].)

4

provocative act doctrine and was therefore ineligible for relief as a matter of law.[5]

## DISCUSSION

I.      Overview of Senate Bill No. 1437

To the end of ensuring a person's sentence is commensurate with the person's individual criminal culpability, Senate Bill No. 1437 (2017–2018 Reg. Sess.) limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Senate Bill No. 1437 added section 189, subdivision (e) (limiting application of the felony-murder rule) and section 188, subdivision (a)(3) (stating that "to be convicted of murder, a principal in a crime shall act with malice aforethought" and malice "shall not be imputed to a person based solely on his or her participation in a crime"). As amended by Senate Bill No. 775, effective January 1, 2022, these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

Senate Bill No. 1437 also created a procedure, codified at section 1172.6, for a person convicted of murder, attempted murder, or voluntary manslaughter under the former law to be resentenced if the person could no longer be convicted of those

---

[5] The trial court also denied the petition as to the attempted murder count. That count is not at issue on appeal.

5

crimes under the current law.  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Gentile*, *supra*, 10 Cal.5th at p. 847.)  A defendant commences that procedure by filing a petition containing a declaration that, among other things, the defendant could not presently be convicted of murder, attempted murder, or voluntary manslaughter under the current law. (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

At the prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved.  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)  In determining whether the petitioner has made a prima facie case for relief, the trial court may look at the record of conviction, including jury instructions, verdicts, and closing argument, to determine readily ascertainable facts such as the crime of conviction.  (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 56.)  At the prima facie stage, the trial court does not engage in fact finding that involves the weighing of evidence or exercise of discretion. (*Lewis*, at p. 972.)  If a petition establishes a prima facie case for relief, the trial court must appoint counsel if requested, issue an order to show cause, and hold an evidentiary hearing.  (§ 1172.6, subds. (b)(3), (c), & (d)(1).)  But if at the prima facie stage the record of conviction establishes that the petition is meritless, the trial court may dismiss it.  (*Lewis*, at p. 971.)

To deny a petition at the prima facie stage, the record of conviction must demonstrate the petitioner is ineligible for relief as a matter of law.  (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101 (*Ervin*).)  We review the denial of a petition at the prima facie stage de novo.  (*Ibid.*)

6

II.     Provocative act murder

Calhoun was convicted of murder under the provocative act doctrine.  Relying primarily on *People v. Lee* (2023) 95 Cal.App.5th 1164 (*Lee*), Calhoun contends that although provocative act murder requires the defendant to personally harbor malice, the record of conviction suggests he may have been convicted of Wilson's murder under a now-improper theory of imputed malice.  As we explain, we disagree.

The provocative act doctrine applies when someone other than the defendant or an accomplice kills during a crime.  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)  Under this doctrine, when a perpetrator of a crime commits an act likely to result in death, and the victim kills in a reasonable response to that act, the perpetrator is guilty of murder. (*People v. Johnson* (2020) 57 Cal.App.5th 257, 265.)  The killing is thus attributable to the commission of the felony and to the defendant's or the accomplice's intentional act, committed with conscious disregard for human life.  (*Ibid.*)  A participant in the crime who does not commit a provocative act may be vicariously liable for a killing the accomplice causes based on having aided and abetted the underlying crime.  (*Ibid.*)  Accordingly, a defendant may be vicariously liable for a surviving accomplice's provocative conduct.  (*Ibid.*)

*Lee*, *supra*, 95 Cal.App.5th at pages 1175 to 1182, traced the history of the provocative act doctrine, observing that when the *Lee* defendant was convicted in 1994, "a defendant could be convicted for a killing by a third party provoked by an accomplice's action with malice aforethought, regardless of the defendant's personal mental state" (*id.* at p. 1169).  This began to change with *People v. Concha* (2009) 47 Cal.4th 653, which held

that a killing by a third party in response to an attempted murder could support first degree, as opposed to second degree, murder so long as the jury found that the individual defendant personally acted willfully, deliberately, and with premeditation. (See generally *Lee*, at pp. 1180–1181.) Thereafter, *People v. Gonzalez*, *supra*, 54 Cal.4th at page 655 held that all provocative act murder requires proof the defendant personally harbored malice.

The *Lee* defendant's jury was instructed under the pre-*Concha* formulation of the provocative act doctrine, which did not require the defendant to harbor malice personally.[6] The instruction provided that to prove murder under this doctrine, the People had to prove (1) a robbery was committed, (2) during the robbery's commission, "defendant *or another surviving perpetrator* also intentionally committed a provocative life-threatening act" which was unnecessary to committing the robbery, (3) "the provocative life-threatening act was deliberately performed with knowledge of the danger to and with conscious disregard for human life," (4) such act was sufficiently provocative and life threatening that another person not a perpetrator of the robbery, in a reasonable response to the act, killed a perpetrator of such crime, and (5) the provocative life-threatening act proximately caused the accomplice's death. (*Lee*, *supra*, 95 Cal.App.5th at pp. 1182–1183.) This instruction permitted the jury to find the defendant guilty of murder based

---

[6] Whether a defendant is entitled to resentencing under section 1172.6 because malice could be imputed to the defendant under the provocative act doctrine for pre-2009 convictions is on review in *People v. Antonelli* (2023) 93 Cal.App.5th 712, review granted October 18, 2023, S281599.

8

on his *surviving co-perpetrator's* malicious mental state rather than on the defendant's personal malice. (*Ibid.*) Because a murder conviction can no longer be premised on imputed malice, *Lee* held that the defendant was entitled to an evidentiary hearing under section 1172.6, subdivision (d).

In contrast, Calhoun's jury was not presented with a theory of imputed malice. Instead, the prosecutor's theory was that victim Rosalio, in response to Calhoun's provocative act, stabbed Wilson, killing him. The trial court instructed on that theory with CALJIC No. 8.12:

> The defendant is accused in count 1 of having committed the crime of murder, in violation of section 187(a) of the Penal Code.
>
> A homicide committed during the commission of a crime by a person who is not a perpetrator of that crime, in response to an intentional provocative act by a perpetrator of the crime other than the deceased perpetrator, is considered in law to be an unlawful killing by the surviving perpetrator of the crime.
>
> An "intentional provocative act" is defined as follows: [¶] 1. The act was intentionally committed; [¶] 2. The natural consequences of the act were dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life.
>
> In order to prove this crime, each of the following elements must be proved: [¶] 1. The crime of robbery was committed; [¶] 2. During the commission of the crime, the defendant also committed an intentional provocative act; [¶] 3. The victim of the robbery in response to the provocative act, killed a perpetrator of the crime; [¶] 4. The

9

defendant's commission of the intentional provocative act was a cause of the death of David Wilson.

The jury was instructed that the intentional provocative act had to be committed by "a perpetrator of the crime *other than the deceased perpetrator*," Wilson. (CALJIC No. 8.12, italics added.) Thus, to find Calhoun guilty of murder under this instruction, the jury had to find that Calhoun—not Wilson—committed an intentional provocative act.

Further, the jury had to find that Calhoun deliberately committed the intentional provocative act with knowledge of the danger to and conscious disregard for human life, which is implied malice. Accordingly, the instruction did not allow the jury to impute Wilson's malice to Calhoun but instead required Calhoun personally to harbor malice. Indeed, Calhoun acknowledges that CALJIC No. 8.12 "suggested" he had to personally harbor malice but further suggests the issue is not "so clear cut" under *Lee*. But, as we have shown, the provocative act murder instruction given to the *Lee* jury differed markedly from the one given to Calhoun's jury. (See, e.g., *People v. Cunningham* (2024) 101 Cal.App.5th 678, 681 (conc. opn. of Cody, J.) [same version of CALJIC No. 8.12 required jury to determine whether appellant committed an intentional provocative act during robbery and acted with implied malice], review granted July 10, 2024, S285205; see *People v. Flores* (2023) 96 Cal.App.5th 1164, 1175 [jury instructed that defendant had to intentionally commit provocative act, knowing act was dangerous to human life, and with conscious disregard to life].)

Calhoun argues that CALJIC No. 8.12 was also problematic because it misstated the element of implied malice. In support, he cites the current CALCRIM instruction on provocative act

murder, CALCRIM No. 560, and *People v. Mai* (1994) 22 Cal.App.4th 117, 123 (*Mai*), disapproved on another ground in *People v. Nguyen* (2000) 24 Cal.4th 756.  CALCRIM No. 560 provides that to prove a defendant guilty of provocative act murder, the People must prove the defendant knew that "the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life."  The instruction further provides that a provocative act is an act whose "natural and probable consequences are dangerous to human life, because there is a high probability that the act will provoke a deadly response."  (CALCRIM No. 560.) *Mai* found that the version of CALJIC No. 8.12 given there failed to adequately define implied malice and the provocative act because it stated, " 'Malice is implied when the provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.' " (*Mai*, at p. 126.)  A better instruction would state that malice is implied when the killing resulted from an intentional act, the act's natural consequences are dangerous to human life, and the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.  (*Ibid.*)

We do not agree that either CALCRIM No. 560 or *Mai* show that CALJIC No. 8.12 improperly instructed on the element of implied malice.  Indeed, the version of CALJIC No. 8.12 given to Calhoun's jury used the language *Mai* approved.  Moreover, our California Supreme Court has recently reiterated that implied malice requires a killing " 'proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with

11

conscious disregard for life.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) The version of CALJIC No. 8.12 given to Calhoun's jury stated that the natural consequences of the intentional provocative act must have been dangerous to human life, and the act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life. This accurately stated the implied malice element. (See also *People v. Bell* (2020) 48 Cal.App.5th 1, 13–14 [CALJIC No. 8.12's statement that "natural consequences" of act were dangerous to human life is correct statement of law].)

Calhoun further notes that CALCRIM No. 560 defines a provocative act as one that goes beyond what is necessary to accomplish the underlying crime, in this case, robbery. (See also *People v. Mejia* (2012) 211 Cal.App.4th 586, 604 [if underlying crime which provokes killing does not require intent to kill, provocative conduct must be an act beyond that necessary simply to commit the crime]; *People v. Briscoe* (2001) 92 Cal.App.4th 568, 582, fn. 6.) He contends that CALJIC No. 8.12 is "not clear" on this point.[7] When analyzing whether jury instructions render a petitioner ineligible for relief at the prima facie stage of a section 1172.6 proceeding, we consider whether it is reasonably likely the jury interpreted the instruction in an improper way. (*People v. Allen* (2023) 97 Cal.App.5th 389, 398; *People v. Estrada* (2022) 77 Cal.App.5th 941, 948–949.) It is not reasonably likely the jury interpreted CALJIC No. 8.12 in the manner Calhoun suggests.

---

[7] Calhoun raised this issue on direct appeal, and the court rejected it, stating that CALJIC No. 8.12 "clearly informed the jury the provocative act had to be something over and above those acts inherent in committing the robbery." (*People v. Calhoun, supra*, B183242.)

Rather, CALJIC No. 8.12 clearly told the jury that provocative act murder requires proof, first, that a robbery was committed, and second, that during the robbery, Calhoun "*also* committed an intentional provocative act." (CALJIC No. 8.12, italics added.) The word "also" sufficiently conveyed that Calhoun had to do something beyond the robbery. The jury would have further understood this because it had to first find that Calhoun committed a robbery, which was defined elsewhere, in CALJIC No. 9.40. Further, the prosecutor in closing argument said that provocative act murder required Calhoun to have committed a robbery and to have committed an intentional provocative act during it. He added, "So *in addition to* the robbery, the defendant has to do something, and the law calls it an intentional provocative act." (Italics added.)

Calhoun also argues that CALJIC No. 3.00 undermined the personal malice requirement in CALJIC No. 8.12. CALJIC No. 3.00 instructed the jury that all persons "involved in committing a crime" are "principals in that crime" and, as such, are, "regardless of the extent or manner of participation . . . equally guilty." The "equally guilty" language in former CALJIC No. 3.00[8] "generally state[s] a correct rule of law," but has been criticized because it "could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.) Calhoun similarly argues that CALJIC No. 3.00 allowed the jury to find

---

[8] The instruction has been revised to make the "equally guilty" language optional. (*People v. Johnson* (2016) 62 Cal.4th 600, 640, fn. 5.)

him guilty of murder even if it believed that Wilson committed the provocative act. These criticisms are irrelevant here because Calhoun was the only defendant on trial, and, as we have said, the jury was plainly instructed via CALJIC No. 8.12 that his liability for murder had to be based on his personal mental state and personal intentional provocative acts.

Moreover, the record of conviction otherwise shows that all elements of provocative act murder were clearly and accurately presented to the jury. In closing argument, the prosecutor referred to the dangerous acts *Calhoun* committed during the robbery: demanding the gun from Wilson, demanding more money from Rosalio, pushing Rosalio to the rear of the restaurant, and choosing to struggle with Rosalio over the knife. The prosecutor repeatedly said that Wilson was killed because of *Calhoun's* acts: "If the defendant had not acted how he did, would David Wilson be dead of a stab wound to the chest? And the answer's no"; "David Wilson was killed because the defendant engaged in that conduct"; and Calhoun "set in motion this chain of events that caused David Wilson to turn out to be more of a friend to [Calhoun] than [Calhoun] was to him. David Wilson, because of [Calhoun's] conduct, went to help him, ended up dead." Finally, the prosecutor argued that Calhoun engaging in a struggle, grabbing the knife, and swinging the knife all over the place "established this provocative act." This argument made clear that Calhoun—not Wilson—had to commit the intentional provocative act or acts.

Finally, Calhoun suggests that the trial court did not have the necessary record of conviction to determine his eligibility for section 1172.6 resentencing. But he does not specify what was missing from the trial court's review. In any event, our de novo

14

review has included the jury instructions, verdicts, and trial transcript, inclusive of the parties' closing arguments.[9]  (See generally *People v. Duchine*, *supra*, 60 Cal.App.5th at p. 815 [court reviews record of conviction to determine resentencing eligibility under § 1172.6].)  Based on that record, Calhoun is ineligible for relief under section 1172.6.

---

[9]     Because we have concluded that the record of conviction establishes as a matter of law that Calhoun is ineligible for resentencing, we decline to address the Attorney General's arguments that this appeal presents a routine claim of instructional error that could have been asserted on direct appeal and that Calhoun has made no showing that he could not presently be convicted of murder because of changes to section 188 and 189 effected by Senate Bill Nos. 1437 and 775.  (See generally *People v. Flores*, *supra*, 96 Cal.App.5th at pp. 1173–1174.)

## DISPOSITION

The order denying Darest Calhoun's Penal Code section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


ADAMS, J.


BERSHON, J.[*]

---

[*]   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.