Filed 11/19/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B299638 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA015162) |
| v. | |
| DERRICK DANTE SWANSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge. Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Derrick Swanson was convicted of first degree murder under the provocative act doctrine. He filed a petition in the superior court under Penal Code section 1170.95, which permits a defendant convicted of murder under the felony-murder rule or natural and probable consequences doctrine to be resentenced. The court found he was ineligible for relief as a matter of law because he was convicted neither under the felony murder rule nor under the natural and probable consequences doctrine. The court therefore denied the petition without appointing counsel or holding an evidentiary hearing.

Swanson contends Penal Code section 1170.95 should apply to his murder conviction, and he should have been appointed counsel to assist with his petition. We disagree with both contentions, and thus affirm.

## BACKGROUND

We take the facts from our opinion affirming Swanson's conviction. "On March 8, 1993, at approximately 8 p.m., appellant and Anthony Chapple robbed four individuals at gunpoint at a Long [B]each gas station. One of the victims, Ruben Garcia, worked at the gas station. The other victims were Garcia's wife Rosa, his brother, and a female customer.

"Appellant and Chapple forced the victims into a storage room where they took Rosa's jewelry and purse and several cartons of cigarettes. Then appellant, who had been told that Rosa was pregnant, grabbed her by the hair and dragged her into the front office. He called her a "fucking bitch" and told her he would kill her if she did not open the safe. After Rosa stated that she did not have the keys to the safe, appellant shoved her toward the ground. When Garcia tried to stop appellant, Chapple threatened to shoot Garcia's brother. Meanwhile, the two

2

assailants emptied the cash register and took all of the money that Garcia had in his wallet.

"Just before appellant and Chapple left, appellant pointed his gun at Garcia and Rosa and fired one shot, causing Rosa to scream.  Garcia grabbed his gun from the desk drawer, loaded it, and gave chase.  He testified at trial that he believed Rosa had been shot and was afraid that appellant and Chapple would return to the gas station and kill the rest of them.  As appellant and Chapple ran toward an alley, Garcia fired two shots in their direction.  He then saw Chapple stumble, but thereafter lost sight of both men.  However, someone in the alley fired a shot at him, and he fired back once to frighten the shooter.

"Chapple died as a result of two bullet wounds inflicted by Garcia.

"In his defense, appellant claimed that Garcia unreasonably responded to the situation by shooting at him and Chapple.  In support of his claim, appellant offered Garcia's initial statement to the defense investigator that he fired at the robbers because he wanted to retrieve the stolen money." (*People v. Swanson* (July 31, 1995, B085170) [nonpub. opn.].)

Swanson was convicted of first degree murder (Pen. Code, § 187, subd. (a)),[1] assault with a firearm (§ 245, subd. (a)(2)), and four counts of second degree robbery (§ 211), and the jury found that he personally used a firearm to commit the crimes (§ 12022.5, subd. (a)).  He was sentenced to state prison for 32 years to life.

Swanson claimed on appeal that insufficient evidence sustained the murder conviction under the provocative act

---

[1] All statutory references will be to the Penal Code.

doctrine, which holds that when an accomplice is killed by a victim during the commission of a robbery, the principal may be convicted of murder based on direct liability arising from the principal's own acts. (*People v. Superior Court* (*Bennett*) (1990) 223 Cal.App.3d 1166, 1172.) In affirming the conviction, we noted that Swanson not only assaulted Garcia's pregnant wife, but also gratuitously shot at the couple, conduct that was unnecessary to the underlying robbery. Given Swanson's apparent willingness to engage in needless acts of violence, the jury could conclude that Garcia reasonably believed the assailants might return to kill the victims even though they appeared to have fled, and killed Chapple in a "reasonable response to [Swanson's] provocative conduct." (*People v. Swanson*, *supra*, B085170, at p. 4.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), which limited the felony murder rule and "amend[ed] . . . the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).)

SB 1437 added section 1170.95, which establishes a procedure by which an individual convicted of murder under the natural and probable consequences doctrine or felony murder rule can seek vacation of that conviction and resentencing. (Stats. 2018, ch. 1015, § 4, pp. 6675-6677; see also *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1134, review granted Mar. 18, 2020, S260598.) The provisions of SB 1437 became effective on January 1, 2019.

4

On May 13, 2019, Swanson filed a petition for writ of habeas corpus alleging he was eligible for relief pursuant to section 1170.95 because he was found guilty of first degree murder under the felony murder rule.  The court construed the filing as a petition for recall and resentencing under section 1170.95, and summarily denied it without appointing counsel, finding Swanson ineligible for relief because he was convicted under the provocative act doctrine, not the natural and probable consequences doctrine or felony murder rule.

## DISCUSSION

Swanson contends he made a prima facie showing of entitlement to relief under section 1170.95, and the court erred by denying him appointed counsel to support his showing.  We disagree with both contentions.

## I.    Legal Principles

"A conviction for murder requires the commission of an act that causes death, done with the mental state of malice aforethought (malice)."  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653 (*Gonzalez*).)

Prior to the enactment of SB 1437, however, the felony-murder rule provided a theory under which a defendant could be found guilty of murder when the defendant or an accomplice killed someone during the commission of an inherently dangerous felony, whether or not the defendant harbored intent to kill or malice.  (*Gonzalez*, *supra*, 54 Cal.4th at p. 654.)

Also before SB 1437, malice could be imputed to an aider and abettor under the natural and probable consequences doctrine.

" ' "A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense]

5

but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime." ' [Citation.] 'Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.' [Citation.] [¶] A nontarget offense is a 'natural and probable consequence' of the target offense if, judged objectively, the additional offense was reasonably foreseeable. [Citation.] The inquiry does not depend on whether the aider and abettor actually foresaw the nontarget offense. [Citation.] Rather, liability ' "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." ' " (*People v. Chiu* (2014) 59 Cal.4th 155, 161-162.)

Thus, before SB 1437, an aider and abettor who lacked express malice but merely engaged in activity of which murder was a natural and probable consequence could have implied malice imputed to him or her, and could therefore be convicted of second degree murder. (*People v. Chiu, supra,* 59 Cal.4th at p. 164.)

On September 11, 2018, Governor Brown signed SB 1437 into law, which eliminated the natural and probable consequences doctrine for murder and restricted felony murder to circumstances where the defendant harbored malice or was a major participant in the underlying felony and acted with reckless indifference to human life.

A primary purpose of SB 1437 was to align a person's culpability for murder with his or her mens rea. (See Stats. 2018,

6

ch. 1015, § 1, subd. (g).) To effectuate that purpose, SB 1437 amended section 188 to state that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

SB 1437 also added section 1170.95, which permits "[a] person convicted of felony murder or murder under a natural and probable consequences theory" to petition the sentencing court to vacate the conviction and resentence on any remaining counts if the person could not be convicted of murder under the new section 188. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) If any of this information is missing "and cannot be readily ascertained by the court," the court may deny the petition without prejudice. (§ 1170.95, subd. (b)(2).)

If the petition contains the required information, the court must "review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of [section 1170.95]." (§ 1170.95, subd. (c).) If the petitioner has made this initial prima facie showing, he or she is entitled to appointed counsel, if requested, and the prosecutor must file a response, and the petitioner may file a reply. (*Ibid*.) The court then reviews the petition a second time. If it concludes in light of this briefing that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and recall the sentence and

7

resentence the petitioner on any remaining counts. (*Id.* at subds. (c) & (d)(1).)

To determine whether a petitioner has made a prima facie case for relief under section 1170.95, a trial court may look to the record of conviction, including the court file and the opinion from the petitioner's original appeal from his or her conviction. The contents of the record of conviction defeat a prima facie showing when the record shows as a matter of law that the petitioner is not eligible for relief.

We review de novo whether the trial court properly interpreted and fulfilled its duty under the statute. (See *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 287.)

## II.    Analysis

Swanson contends summary denial of his petition was premature, and denied him a fair opportunity to respond to the trial court's erroneous conclusion that he was not convicted under a natural and probable consequences or felony murder theory. He argues he is eligible for resentencing under section 1170.95 because provocative act murder is merely a version of the natural and probable consequences doctrine, and *first degree* provocative act murder is "inextricably intertwined" with the felony murder rule. We disagree.

### A.    Provocative Act Murder is Not a Natural and Probable Consequences Theory

The record of conviction in this case demonstrates that Swanson was convicted of first degree murder not under felony-murder or natural and probable consequences theories, but under the provocative act doctrine established by the Supreme Court in *People v. Gilbert* (1965) 63 Cal.2d 690 (*Gilbert*). There, the Court

8

declared: "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder." (*Id*. at p. 704.) "The provocative act murder doctrine has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*People v. Cervantes* (2001) 26 Cal.4th 860, 867.)

It is apparent, therefore, that "[a] murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice." (*Gonzalez*, *supra*, 54 Cal.4th at p. 655; see *People v. Mejia* (2012) 211 Cal.App.4th 586, 603 ["a defendant . . . must personally possess the requisite mental state of malice aforethought when he . . . causes the death through his provocative act"].)

This malice requirement for provocative act murder was well established in 1995 when we affirmed Swanson's conviction. (See, e.g., *People v. Mai* (1994) 22 Cal.App.4th 117, 124 ["an element of the provocative act doctrine is implied malice"], disapproved on other grounds in *People v. Nguyen* (2000) 24 Cal.4th 756, 757; see also *Gilbert*, *supra*, 63 Cal.2d at pp. 703-704 [defendant's murder conviction based on police officer's killing of accomplice required proof of malice].)

The malice requirement stands in marked contrast to the mens rea contemplated by the natural and probable consequences

9

doctrine.  As discussed above, liability under that doctrine arose when "a reasonable person in the defendant's position would have or should have known that the charged offense was a *reasonably foreseeable* consequence of the act aided and abetted."  (*People v. Chiu, supra*, 59 Cal.4th at p. 162, italics added.)  The provocative act doctrine, on the other hand, requires that the perpetrator exhibit a "conscious disregard for life."  (*Gilbert, supra*, 63 Cal.2d at p. 704; see *People v. Smith* (2018) 4 Cal.5th 1134, 1165 [knowledge of danger and conscious disregard for human life is essential to a finding of implied malice]; *People v. Lee* (2020) 49 Cal.App.5th 254, 261 [the natural and probable consequences doctrine is not an implied malice theory].)

Section 188, as amended, establishes that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought."  (§ 188, subd. (a)(3).)  Because Swanson was convicted of provocative act murder, the jury necessarily found he acted with malice aforethought.  He was therefore not convicted under the natural and probable consequences doctrine.  (Nor can he show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" as required for relief under section 1170.95, subdivision (a)(3).)

Swanson argues provocative act murder has been characterized by the courts as one particular subset of the natural and probable consequences doctrine.  He finds this characterization in several cases discussing the requirement, under the provocative act doctrine, that the victim's death result from the victim's or a police officer's "reasonable response" to the defendant's actions.  (*Gilbert, supra*, 63 Cal.2d at p. 704.)  Swanson misconstrues the courts' discussions.

10

In *Gonzalez*, upon which Swanson relies, the court stated, "An important question in a provocative act case is whether the act *proximately caused* an unlawful death. '[T]he defendant is liable only for those unlawful killings proximately caused by the acts of the defendant or his accomplice. [Citation.] "In all homicide cases in which the conduct of an intermediary is the actual cause of death, the defendant's liability will depend on whether it can be demonstrated that [the defendant's] own conduct *proximately* caused the victim's death . . . ." [Citation.] "[I]f the eventual victim's death is not the natural and probable consequence of a defendant's act, then liability cannot attach." [Citations.]" ' When the defendant commits an inherently dangerous felony, the victim's self-defensive killing is generally found to be a natural and probable response to the defendant's act, and not an independent intervening cause that relieves the defendant of liability. [Citations.] The question of proximate cause is ordinarily decided by the jury . . . ." (*Gonzalez*, *supra*, 54 Cal.4th at pp. 655-656.)

Thus in any provocative act case, where by definition an intermediary's act killed the victim, an important question will be whether the defendant's conduct proximately caused the death. (See *In re Aurelio R.* (1985) 167 Cal.App.3d 52, 57 ["A 'provocative act' murder is yet another breed. Here neither the defendant nor his accomplices intend to kill the victim. Nor indeed do any of them pull the trigger"].) The Court's analysis of proximate cause in terms of foreseeability of the natural and probable consequences of the defendant's malicious conduct does not somehow bring a provocative act killing within the malice-free natural and probable consequences doctrine.

11

The remaining cases upon which Swanson relies for this point are similarly distinguished. In *People v. Fowler* (1918) 178 Cal. 657, the Supreme Court upheld a murder conviction where the death may have resulted not directly from the defendant's conduct but from the action of a third party in running over the defendant's victim. The Court stated that the defendant's criminal liability "would be similar to many that are given in the books where the defendant was held responsible for the natural and probable result of his unlawful acts." (*Id.* at p. 669.)

In *People v. Roberts* (1992) 2 Cal.4th 271, an inmate stabbed by the defendant staggered away and stabbed a guard to death. In upholding the defendant's conviction for the guard's murder, the Court held "there was sufficient evidence of proximate cause for the jury to decide that liability attached for defendant's acts," because "the evidence sufficed to permit the jury to conclude that [the guard's] death was the natural and probable consequence of defendant's act." (*Id.* at p. 321.)

In *People v. Medina* (2009) 46 Cal.4th 913, the Court explained, "Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' [Citation.] [¶] '[A]lthough variations in phrasing are found in decisions addressing the doctrine –"probable and natural," "natural and reasonable," and "reasonably foreseeable"– the ultimate factual question is one of foreseeability.' [Citation.] Thus, ' "[a] natural and probable consequence is a foreseeable consequence." ' " (*Id.* at p. 920.)

12

In *People v. Gardner* (1995) 37 Cal.App.4th 473, the court stated, "the term 'reasonable response,' which the *Gilbert* court used to delineate the scope of murder liability, was simply a shorthand way of expressing the principle that the killing must, on an objective view of the facts, be proximately caused by the acts of the defendant. . . . [¶] It is, therefore, clear that a defendant may be liable for murder, as here, for a killing when his acts were the 'proximate cause' of the death of the victim, even though he did not administer the fatal wound. Our Supreme Court has also phrased this same requirement of 'proximate cause' interchangeably, on the same page, with the question of 'natural and probable consequence.'" (*Id.* at p. 479.)

None of these cases held that a provocative act murder falls under the natural and probable consequences theory of malice-free murder. They held merely that a provocative act murder requires a showing that defendant's act was the proximate cause of death, which can be shown where the death was a natural and probable consequence of the act.

## B. First Degree Provocative Act Murder does not Fall Within the Felony Murder Rule

Swanson argues that because first degree provocative act murder is "inextricably intertwined" with the felony murder rule, the change in the rule effected by SB 1437 applies to convictions for provocative act murder. We reject the premise, and thus the argument.

A "[p]rovocative act murder may be either of the first or second degree." (*People v. Mejia, supra,* 211 Cal.App.4th at p. 604.) Like any other murder, a provocative act murder committed without deliberation and premeditation is murder of the second degree. (*Ibid.*) However, a provocative act murder of

13

the second degree can be elevated to first degree murder when it occurs "during the course of a felony enumerated in section 189 that would support a first degree felony-murder conviction." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Section 189 defines felony murder as a death resulting from the perpetration of an enumerated felony by a person who "was a major participant in the underlying felony and acted with reckless indifference to human life."  When a provocative act murder is established, "section 189 may properly be invoked to determine the degree of that murder.  Thus, . . . when a murder is otherwise established, section 189 may be invoked to determine its degree."  (*Gilbert*, *supra*, 63 Cal.2d at p. 705.)

The mere fact that a second degree provocative act murder may be elevated to first degree murder pursuant to felony murder principles neither intertwines provocative act murder with felony murder nor transforms the former into the latter under *Gilbert*.

On the contrary, our Supreme Court has held that the provocative act doctrine is "distinguished from the felony murder rule."  (*Gonzalez*, *supra*, 54 Cal.4th at p. 654.)

Felony murder is a "murder . . . that is committed in the perpetration of, or attempt to perpetrate arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under [specified sections of the Penal Code]." (§ 189, subd. (a).)  "Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed to perpetrate the felony.  Indeed, in the present case the killing was committed to thwart a felony.  To include such killings within section 189 would expand the meaning of the words 'murder . . . which is committed in the perpetration . . . [of]

14

robbery . . .' beyond common understanding." (*People v. Washington* (1965) 62 Cal.2d 777, 781.)

The felony-murder rule thus cannot support a murder conviction when an accomplice is killed by a third party rather than by the defendant or another accomplice. (*Gonzalez*, *supra*, 54 Cal.4th at p. 654.)

Swanson argues that elevation of an otherwise second degree provocative act murder to first degree murder pursuant to felony murder principles attaches first degree murder liability where the mens rea was no different from that required in a felony murder prosecution, because it is only by felony murder principles that the mens rea required for first degree murder is imputed to a provocative act defendant. (See *People v. Sanchez*, *supra*, 26 Cal.4th at p. 852 ["provocative act implied malice murders are first degree murders when they occur during the course of a felony enumerated in section 189 that would support a first degree felony-murder conviction"]; *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 139, fn. 4 ["The killing [of the robbery victim], having been committed by the policeman to thwart the robbery, cannot be said to have been committed in perpetration of it. *But the act which made the killing a murder attributable to the robber—[the robber's] initiating the gun battle [with the policeman]—was committed in the perpetration of the robbery.* Therefore, . . . section 189 may properly be invoked to determine that the murder is of the first degree"].)

Perhaps so. But that does not mean the killing was "committed to perpetrate the felony" (*People v. Washington*, *supra*, 62 Cal.2d at p. 781), nor that Swanson was "[a] person convicted of felony murder," as section 1170.95 requires

15

(§ 1170.95, subd. (a)).  To hold that a killing perpetrated to *thwart* a felony would constitute felony murder for purposes of section 1170.95 would rewrite the statute.  This we may not do.

Swanson argues that his first degree provocative act murder conviction may signify no more than that the jury found that the killing occurred during the commission of a robbery.  We disagree.  To find Swanson guilty of provocative act murder in the first instance, the jury necessarily found he acted with malice.  (See *Gonzalez, supra*, 54 Cal.4th at p. 655 ["A murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice"].)

### C.    Remand is Not Appropriate

Swanson argues remand is necessary because the trial court could not determine whether he was entitled to relief without permitting the statutory process to take place, and he was denied an opportunity to counter the court's misconceptions and establish an appellate record.  We disagree.

The right to counsel under section 1170.95 does not attach until the petitioner makes a prima facie showing of eligibility under the statute (*People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1139-1140, review granted Mar. 18, 2020, S260598; cf. *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted Mar. 18, 2020, S260493).  Swanson failed to demonstrate eligibility under the statute.  His arguments contesting that failure have all been fairly presented by his appellate counsel, and an appellate record preserved.

16

## DISPOSITION

The order is affirmed.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.