Filed 2/16/21  P. v. Swain CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYRONE SWAIN et al.,<br><br>    Defendants and Appellants. | B299137<br>(Los Angeles County<br> Super. Ct. No. BA115847) |

APPEAL from an order of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant Tyrone Swain.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant Todd Stroud.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael. R. Johnsen, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

Defendants and appellants Tyrone Swain and Todd Stroud appeal from orders summarily denying their petitions to vacate their second degree murder convictions and be resentenced pursuant to Senate Bill No. 1437 (S.B. 1437), which added section 1170.95 to the Penal Code.[1] Section 1170.95 provides that if defendants previously have been convicted of murder under the felony-murder rule or the natural and probable consequences doctrine and qualify for relief, the statute permits them to petition to vacate the convictions and obtain resentencing on any remaining counts.

Swain and Stroud were jointly tried for murder and other crimes arising from a violent armed robbery in which a victim died of a single gunshot wound. After the first jury acquitted them on some counts and deadlocked on others, including the murder charge, they were tried a second time. As to Swain, the second jury was instructed on first degree premeditated murder, second degree murder based on express or implied malice, direct aiding and abetting murder, and murder under the provocative act doctrine. As for Stroud, the court instructed the jury on the same theories of liability, and further instructed on first degree felony murder. By general verdict, both defendants were convicted of second degree murder.

In their direct appeal in *People v. Swain* (June 14, 2005, B155456) [nonpub. opn.] (*Swain I*), defendants challenged the sufficiency of the evidence to support their murder convictions. We agreed with

---

[1]     Undesignated statutory references are to the Penal Code.

defendants that the evidence did not support an instruction on the provocative act doctrine. (*Id.* at pp. 6–7.) We found the instructional error harmless, however, because the "the evidence here eliminated all but appellants as the source of the fatal shot," which supported the remaining theories of second degree murder. (*Id.* at p. 7.)

Swain and Stroud separately filed section 1170.95 petitions for resentencing. Following the appointment of counsel and briefing, the trial court reviewed our opinion in *Swain I* and summarily denied both petitions because neither defendant had been convicted under the felony-murder rule or the natural and probable consequences doctrine.

We agree with the trial court's ruling. We reject Stroud's contention that the jury could have convicted him of second degree felony murder, a theory never presented to the jury or supported by law. We also reject defendants' argument that the provocative act jury instructions, which we previously held were inapplicable to this case, were tantamount to an instruction on the natural and probable consequences doctrine, or that the omission of the provocative act doctrine from S.B. 1437 violates equal protection principles. Finally, we reject Swain's contention that the court was required to hold a hearing prior to summarily denying his petition. We affirm the orders.

3

# FACTUAL BACKGROUND[2]

This case arose from an armed robbery at a recording studio on May 24, 1995. Jennifer Lucas, who had been dating Swain at the time of the incident, was the prosecution's primary witness. Earlier in the month, Gregory Everett invited Lucas to come to the recording studio, which consisted of two rooms on the second floor of a commercial building.

When she arrived on May 24, 1995, Lucas saw Delven Rutledge, Dion Smith, and Michael Alexander inside the studio. Sometime thereafter, Lucas received a phone call from Stroud, who said that he and Swain were outside. Lucas walked downstairs and met with Stroud, Swain, and their friend, Keith Vaden, who was carrying a large duffle bag. The group walked up the stairs to join Rutledge, Smith, and Alexander in the studio.

As the group talked, Rutledge stood up and announced that he was leaving. In response, Stroud walked to the door, followed by Lucas, Swain, and Vaden. When Stroud got to the door, he turned around with a silver gun in his hand and told the others they were not going anywhere. Swain pulled out what appeared to be a black automatic gun, and Vaden took out from the duffle bag what Lucas described as a

---

[2]    We previously granted Swain's request to take judicial notice of the record on appeal in B155456, including our prior opinions in *Swain I*, *People v. Swain et al.* (Apr. 14, 2006, B155456) [nonpub. opn.] (*Swain II*), and *People v. Swain et al.* (Nov. 7, 2007, B155456) [nonpub. opn.] (*Swain III*). *Swain II* and *III* analyzed sentencing issues not relevant to this appeal. We recite the facts from all three opinions, which share an identical factual background.

sawed-off shotgun.  Rutledge described Vaden's firearm as an AK-47, Swain's as a nine-millimeter handgun, and Stroud's as a Tech 9.

The incident quickly escalated, and the witnesses' accounts varied significantly.  Alexander started struggling with Stroud over the gun, and they moved through the door, into the hallway, and then down the stairs.  When Stroud got away, he directed Alexander to go upstairs.  Alexander walked up the stairs as Vaden trained his weapon on him from above.  When Alexander reentered the studio, he was forced to lie on the ground next to Smith and Rutledge.  Alexander felt the barrel of a gun against the back of his head and heard one of the perpetrators say that they should kill him first.  The perpetrators told all three victims to take out their wallets.

As Alexander struggled with Stroud, Lucas went down the stairs and told Stroud that she wanted to leave, at which point Stroud told her to go back upstairs.  Lucas obliged, and sat in the hallway next to the studio and office doors.  After the men went back into the studio, Lucas heard yelling and bumping around.

Everett and Eugene Riley were inside the office across the hall from the studio when the robbery began.  Everett and Riley heard the commotion and saw a man with a gun.  Everett called downstairs to a pager office and told Wallace Conners, Jr., to call 911.  As the perpetrators broke down the office door, Everett and Riley jumped out of the second-floor window and fled.

Conners called 911 and warned the other building tenants about the robbery.  Maurice Hobbs, who did maintenance work at the building, was in the pager office when Conners received Everett's call.

Hobbs armed himself with at least one gun from a desk drawer before moving to the doorway leading to a hallway by the stairs.

After deciding she would get away from the incident, Lucas began to run down the hallway and stairs. She saw a man leaning against the wall in the first floor hallway to the rear door. The man had his arms up over his right shoulder, hands together. Lucas told the man she did not know what was going on. At that point, Stroud was halfway down the staircase with a gun in his hand. Swain was behind Stroud at the top of the stairs, also moving downward with a gun in his hands. After Lucas turned around and ran out of the door, she heard gunshots almost simultaneously.

Hobbs was shot in the neck and staggered into the pager office. When he collapsed, Conners took a gun from his hand. Hobbs died from the single gunshot wound.

After exiting the building to the outside, Lucas saw Everett in the parking lot in his car holding a gun. She also saw Riley run up to Everett's car. Lucas did not see Riley holding a weapon. After locating her car, Lucas drove away.

The gun that fired the fatal wound was never identified. Based on evidence that the wound was "through and through," the medical examiner testified it had been caused by a medium or large caliber weapon, as small caliber ammunition is often stopped by the skin at the back of a gunshot wound. In the examiner's opinion, the wound could have been caused by a .32- or .45-caliber, or nine-millimeter weapon. The examiner opined that the wound was not consistent with a high velocity weapon such as an AK-47.

Five months after the shooting, Vaden shot and killed himself during a traffic stop in San Francisco. The weapon he used, an M-11 semi-automatic pistol, was sent for ballistics testing. A criminalist examined the weapon, a .40-caliber semi-automatic handgun, and two .38-caliber revolvers recovered from the pager shop. With the exception of three bullet fragments that could not be examined, the criminalist concluded that none of the bullets or cartridge casings recovered from the scene had been fired from the weapons found inside the pager shop. Twenty-two of the bullet fragments or cartridge casings recovered at the scene came from the M-11 semi-automatic pistol. Eight cartridge casings, two bullet fragments, a part of a bullet jacket, and a bullet found at the scene were determined to have come from a .45-caliber semi-automatic firearm which was not recovered.

## PROCEDURAL BACKGROUND

Swain and Stroud were charged with one count of murder (§ 187, subd. (a)) and numerous counts of robbery (§ 211), attempted robbery (§§ 664/211), and aggravated assault (§ 245, subd. (a)(1)). The information also alleged that the murder was committed while defendants were engaged in the commission of a robbery (§ 190.2, subd. (a)(17)), and that defendants personally used a firearm during all of the offenses (§ 12022.5, subd. (a)).

The jury in the first trial acquitted Swain of all the attempted robbery and robbery counts, and hung on the remaining charges. The jury acquitted Stroud of one count of attempted robbery, but hung as to the remaining charges. In light of Swain's acquittal on all robbery

7

charges, the court precluded the use of felony murder as a theory of liability against him in the second trial.

During the second trial, the court instructed the jury on various theories of murder against each defendant.[3] As to both defendants, the jury was instructed on first degree premeditated murder (CALJIC No. 8.20), unpremeditated second degree murder (CALJIC No. 8.30), and second degree murder resulting from an unlawful act dangerous to life (CALJIC No. 8.31). The jury was also instructed on direct aiding and abetting principles (CALJIC Nos. 3.00, 3.01, 3.10, 3.14).

As to Swain, the court instructed the jury on the definitions of murder and malice aforethought. (CALJIC Nos. 8.10, 8.11.)[4] The court provided an identical instruction defining malice aforethought with respect to Stroud, but added to the instruction defining murder an additional mental state to account for a theory of first degree felony

---

[3]     The parties previously disputed which jury instructions had been used at trial in *Swain I*. Following a hearing to settle the dispute, we granted the People's motion to augment the record, and treated the instructions attached to the motion as the accurate version of the final jury instructions. We recite the jury instructions from those instructions, which are part of the record in this appeal.

[4]     CALJIC No. 8.10 provided the following three elements of murder as to Swain: "1.  A human being was killed;  [¶]  2.  The killing was unlawful; and [¶]  3.  The killing [was done with malice aforethought]."  CALJIC No. 8.11 defined express malice ("an intention unlawfully to kill a human being") and implied malice ("[t]he killing resulted from an intentional act," the "natural consequences of the act are dangerous to human life," and the "act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life").

murder.[5]  The court also instructed the jury on two versions of the provocative act doctrine under CALJIC No. 8.12.

As to Stroud, the court instructed the jury on first degree felony murder (CALJIC Nos. 8.21, 8.21.1, 8.27), the robbery-murder special circumstance (CALJIC Nos. 8.80.1-8.83.3),[6] and robbery and attempted robbery (CALJIC Nos. 9.40-9.40.2, 9.41, 6.00-6.02.)

The court also instructed the jury on causation for murder and concurrent causes (CALCRIM Nos. 3.40, 3.41).  Finally, the jury was instructed that though it need not unanimously agree on the theory of liability for murder, it was required to unanimously agree on the degree of murder.  (CALJIC No. 8.70; Special Instruction No. 1.)

1.    *Verdicts and Sentencing*

By general verdict, the jury convicted Swain of second degree murder and three counts of simple assault (lesser included offenses of aggravated assault), and found true the allegation that he was personally armed with a firearm.  The jury convicted Stroud of second degree murder, second degree robbery, aggravated assault, and simple assault, and found true the allegation that he personally used a firearm

---

[5]    The separate CALJIC No. 8.10 instruction repeated the definition in footnote 4, but amended the third element as follows:  the "killing [was done with malice aforethought] [or] [occurred during the commission or attempted commission of Robbery.]"

[6]    All of the instructions specified that the unlawful killing which occurs during the commission of robbery or attempted robbery was murder of the first degree.

9

during the crimes. The jury found the robbery-murder special circumstance not true.

The trial court sentenced Swain to an overall term of 46 years to life imprisonment, and Stroud to 30 years to life imprisonment plus 40 years 10 months.

2. *Our Opinion in Swain I*

In their direct appeal, defendants challenged inter alia the sufficiency of the evidence to support the second degree murder convictions. (*Swain I, supra,* at pp. 1, 4–7.) They asserted that the theories of liability (provocative act murder and malice aforethought murder) were unsupported because "the prosecutor failed to present evidence (or argument) that a particular person was the actual shooter, and therefore, causation cannot be established."[7] (*Id.* at p. 5.)

In rejecting the argument, we found that the trial court had erred by instructing the jury on the provocative act doctrine, because no evidence supported a theory that the fatal bullet had been fired by a third party in response to the chain of events set in motion by the robbery. (*Swain I, supra,* at pp. 6–7.) We found the error harmless, however, because the evidence "eliminated all but appellants as the source of the fatal shot," which constituted substantial evidence supporting the remaining theories of liability for second degree murder.

---

[7] Stroud asserted that someone coming from the pager store or hallway at the ground level could have fired the fatal shot. (*Swain I, supra,* at p. 6.)

(*Id.* at p. 7; accord, *id.* at p. 6 ["[t]here was substantial evidence that the shot that killed Hobbs was fired either by Stroud or Swain"].)

We reasoned that the only persons in the area of the shooting that could have fired a bullet in a downward trajectory consistent with Hobbs' wound were Swain and Stroud. Both defendants were seen by Lucas standing in the stairwell, holding firearms, and facing Hobbs immediately before Lucas heard gunfire. (*Id.* at p. 6.) Vaden, the only other person capable of firing a shot, could not have done so because the gunshot wound was inconsistent with one caused by the type of high-powered weapon Vaden had been wielding. (*Ibid.*) Thus, because defendants' conduct was a proximate cause of Hobbs' death (*People v. Sanchez* (2001) 26 Cal.4th 834 (*Sanchez*)), and because neither defendant challenged the sufficiency of the evidence to support the mental state required for second degree murder (i.e., malice), we upheld both second degree murder convictions. (*Swain I, supra*, at p. 6.)

3.   *Petitions for Resentencing*

Following the enactment of S.B. 1437, Swain and Stroud filed petitions for resentencing under section 1170.95, which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of S.B. 1437, may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).)

11

In their petitions for resentencing, Swain and Stroud stated that an information had been filed against them that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, they were convicted of second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and they could not now be convicted of second degree murder because of the changes made to sections 188 and 189. Swain requested that counsel be appointed on his behalf.

The trial court appointed counsel for both defendants, the People filed oppositions to the petitions, and Swain's appointed counsel filed a reply. Without conducting a hearing, the court summarily denied both petitions based on our opinion in *Swain I*, which "reflects that the petitioner[s were] the actual killer[s] and [were] convicted of murder on a theory of being the direct perpetrator and not on a theory of felony murder of any degree, or a theory of natural and probable consequences." Both defendants filed motions for reconsideration. The court denied Stroud's reconsideration motion as untimely, and denied Swain's motion because our opinion in *Swain I* "held that the petitioner was the direct cause of the death of the victim in this case."

Defendants timely filed notices of appeal.

## DISCUSSION

1. *Governing Law*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to

12

murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)

S.B. 1437 also "added a crucial limitation to section 188's definition of malice for purposes of the crime of murder."  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326 (*Verdugo*), rev. granted, S260493, Mar. 18, 2020.)  Under the revised section 188, subdivision (a)(3), "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.]"  (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), rev. granted, S260598, Mar. 18, 2020.)

Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following S.B. 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts.  (§ 1170.95, subd. (a).)

A petition for relief under section 1170.95 must include a declaration by the petitioner that he is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1170.95, subd. (b)(2).)

If the petition includes the required information, subdivision (c) of section 1170.95, prescribes "a two-step process" for the court to determine if it should issue an order to show cause.  (*Verdugo, supra,* 44

13

Cal.App.5th at p. 327.) The court first "review[s] the petition and determine[s] if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) The court then appoints counsel, if requested, and reviews the petition a second time after briefing by the parties to determine if petitioner has established a prima facie case for relief. (*Ibid.*; see *Lewis, supra,* 43 Cal.App.5th at p. 1140.) At this stage, the court may review the petitioner's record of conviction, which may include jury instructions, verdicts, and prior appellate opinions, to determine whether the allegations set forth in the petition are untrue as a matter of law. (*Verdugo, supra,* at p. 333; *Lewis, supra,* 43 Cal.App.5th at p. 1138, quoting Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) ¶ 23:51(H)(1), pp. 23–150 to 23–151.)

If the court concludes the petitioner has made a prima facie showing, it must issue an order to show cause. (§ 1170.95, subd. (c); *Verdugo, supra,* at p. 328.) "Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Verdugo, supra,* 44 Cal.App.5th at p. 327, citing § 1170.95, subd. (d)(1).)

We review the court's ruling to determine if the summary denials of defendants' petitions were correct on any ground, and will not reverse if defendants do not fall within the provisions of section 1170.95 as a matter of law. (*People v. Edwards* (2020) 48 Cal.App.5th 666, 675; *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.)

14

2.  *Defendants Were Not Eligible for Relief under the Felony Murder Provision of Section 1170.95*

For several reasons, Stroud contends that the jury could have convicted him of second degree felony murder, even though the jury was instructed only on first degree felony murder.[8]  He is mistaken.

Stroud first asserts that the jury could have interpreted the causation instruction on murder (CALJIC No. 3.40)[9] to mean that he could be guilty of murder by "engaging in a robbery that set in motion a chain of events that produced death as a 'direct, natural and probable consequence' of that robbery."

But this argument ignores the numerous felony-murder instructions given to the jury *requiring* a first degree murder conviction based on felony murder, and not mentioning second degree felony murder.  (See CALJIC Nos. 8.21; 8.27.)[10]  We cannot presume that the

---

[8]     Swain does not contend that the jury was instructed on a theory of felony murder as a basis for his second degree murder conviction.

[9]     As instructed, CALJIC No. 3.40 provided:  "To constitute the crime of murder there must be in addition to the death an unlawful [act] which was a cause of that death.  [¶]  The criminal law has its own particular way of defining cause.  A cause of the death is an [act] that sets in motion a chain of events that produces as a direct, natural and probable consequence of the [act] the death and without which the death would not occur."

[10]     CALJIC No. 8.21 provided, inter alia, that an "unlawful killing of a human being . . . which occurs [as a direct causal result] of the crime of Robbery or attempted Robbery is murder of the first degree."
         CALJIC No. 8.27 stated, inter alia, that "all persons, who either directly or actively commit the act constituting that crime [of Robbery, or who

15

jury ignored these instructions and convicted defendant on a supposed theory of second degree felony murder which is both inconsistent with the law and on which they were never instructed. (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 244–245 (*Silveria*); *People v. Anzalone* (2013) 56 Cal.4th 545, 557; see also § 189, subd. (a) [murder committed during the perpetration of robbery is murder of the first degree].)

Stroud also asserts that the jury could have ignored the instructions requiring a conviction for first degree felony murder as a matter of compromise or leniency. However, as discussed, we may not presume that the jury ignored the jury instructions on first degree felony murder. (See *Silveria*, *supra*, 10 Cal.5th at pp. 244–245.) Nor may we presume that the jury engaged in arbitrariness or nullification. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1232 [when deciding whether a jury's error affected the verdict, reviewing courts ""exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker""], abrogated in part on another ground as stated in *McGee v. Kirkland* (C.D. Cal. 2010) 726 F.Supp.2d 1073, 1080.)

The case on which Stroud relies, *People v. Underwood* (1986) 181 Cal.App.3d 1223 (*Underwood*), does not persuade us otherwise. In that case, the jury convicted the defendant of second degree murder despite being instructed on only first degree felony murder based on the

aid and abet the robbery], are guilty of murder in the first degree, whether the killing is intentional, unintentional, or accidental."

commission of robbery. (*Id.* at p. 1237.) The court of appeal affirmed the conviction: "Where a defendant is guilty of first degree felony murder as a matter of law, there is no reason to reverse a second degree verdict which is more favorable to defendant than warranted by the evidence. [¶] Given the state of the record in this case, the second degree verdict had to be the product, not of erroneous instructions or prejudicial confusion on the part of the jury, but rather of an attempt by the jury to show unwarranted leniency. Having already received the benefit of jury leniency not supported by the evidence, defendant is in no position to seek outright reversal." (*Ibid.*)

*Underwood* has no application here. It simply held that the defendant's second-degree murder conviction, reached by jury leniency, could not be vacated where the defendant was guilty as a matter of law of first degree murder on a felony murder theory. The court did not suggest that its reasoning has any bearing on a reviewing court's presumption that the jury followed the court's instructions. (See *People v. Powell* (1949) 34 Cal.2d 196, 205, fn. 2 [despite the jury's "'naked *power* to decide all questions arising on the general issue of not guilty,'" it "'only has the right to find the facts, and apply to them the law, as given by the court'"].) Thus, in the instant case, by convicting Stroud of second degree murder, the jury did not convict him of felony murder. Stroud was not eligible for relief under the felony-murder provisions of section 1170.95 as a matter of law.

3. *Defendants Were Not Eligible for Relief under the Natural and Probable Consequences Doctrine Provision of Section 1170.95*

Because neither defendant was convicted of felony murder, they would be eligible for section 1170.95 relief only if they were convicted of murder under the natural and probable consequences doctrine. (§ 1170.95, subd. (a).) Defendants assert that because the jury instruction on the provocative act doctrine (CALJIC No. 8.12) is "indistinguishable" from the natural and probable consequences doctrine, they are entitled to relief under this provision of section 1170.95. Swain alternatively contends that if section 1170.95 applies to the natural and probable consequences doctrine and not to the provocative act doctrine, the resentencing provision violates equal protection principles. We disagree with these contentions.

A. *Relevant Jury Instructions*

The jury was instructed on two different versions of the provocative act doctrine (CALJIC No. 8.12). As to Swain only, the instruction provided:

"A homicide committed during the commission of a crime by a person who is not a perpetrator of such crime, in response to an intentional provocative act by a perpetrator of the crime other than the deceased, is considered in law to be an unlawful killing by the perpetrator[s] of the crime.

"An intentional provocative act is defined as follows: [¶] 1. The act was intentional, [¶] 2. The natural consequences of the act were dangerous to human life, and [¶] 3. The act was deliberately

18

performed with knowledge of the danger to, and with conscious disregard for human life.

"In order to prove this crime, each of the following elements must be proved: [¶] 1. The crime of Assault By Means of Force . . . Likely to Inflict Great Bodily Injury; [¶] 2. During the commission of the crime, a the defendant [*sic*] also committed an intentional provocative act; [¶] 3. Another person not a perpetrator of the crime of Assault By Means of Force Likely to Inflict Great Bodily Injury in response to the provocative act, killed another person; [¶] 4. The defendant's commission of the intentional provocative act was a cause of the death of Keith Maurice Hobbs. [¶] If you find that the crime of murder was committed as defined in this instruction, you must find it to be murder of the second degree."

As to Stroud only, the court provided the same instruction, and added robbery and attempted robbery as alternative predicate crimes during which Stroud engaged in a provocative act.

B. *The Provocative Act Theory is Inapplicable in This Case*

Both defendants agree that the trial court could utilize our prior opinions as part of their records of conviction when determining whether they established a prima facie showing of entitlement to relief. (§ 1170.95, subd. (a)(3); see *Verdugo*, *supra*, 44 Cal.App.4th at pp. 327–330; *People v. Woodell* (1998) 17 Cal.4th 448, 459–460; *People v. Trujillo* (2006) 40 Cal.4th 165, 180.)

Our opinion in *Swain I* establishes that the provocative act theory was unsupported by any evidence as a matter of law. (*Swain I, supra,*

at pp. 6–7; see *People v. Mai* (1994) 22 Cal.App.4th 117, 127 (*Mai*) [the doctrine cannot apply unless two or more co-felons engage in provocative acts that "provoke a lethal response by a victim, police officer, [or] bystander"], disapproved on another ground in *People v. Nguyen* (2000) 24 Cal.4th 756.)

We found the error instructing on the provocative act theory harmless, however, because the evidence "eliminated all but appellants as the source of the fatal shot," which constituted substantial evidence to support the second degree murder convictions based the remaining theories of liability (i.e., murder with malice aforethought and direct aiding and abetting second degree murder). (*Swain I, supra*, at p. 7; see *People v. Aledamat* (2019) 8 Cal.5th 1, 7 [reversal of conviction based on a """factually inadequate theory""" is not required whenever a valid ground for the verdict remains, and there is no affirmative indication that the verdict rested on the inadequate ground].)

Defendants do not dispute that S.B. 1437 did not alter the law regarding criminal liability for second degree murder in cases like this where the jury may have been uncertain as to which defendant actually shot the victim or acted as a direct aider and abettor. (Stats. 2018, ch. 1015, § 1, subds. (f), (g); see *People v. Gentile* (2020) 10 Cal.5th 830, 849-850; *Sanchez, supra*, 26 Cal.4th at pp. 845–849.) Thus, in light of our prior decision upholding the valid theories of liability on which defendants' convictions are based, defendants cannot demonstrate, as a matter of law, that they *could not* now be convicted of second degree murder. (See *Lewis, supra*, 43 Cal.App.5th at pp. 1138–1139; *People v.*

*Garcia* (2020) 57 Cal.App.5th 100, 108; *People v. Gray* (2005) 37 Cal.4th 168, 196–197 [law of the case doctrine applies when the point of law was necessary to prior decision and was actually presented and determined].)

C. *Even if Convicted of Provocative Act Murder, Defendants Are Not Entitled to Relief as a Matter of Law*

Even assuming the jury could have convicted defendants of second degree murder based on the provocative act doctrine (as a matter of law they did not), that theory of liability still remains valid following the enactment of S.B. 1437. That is because the provocative act doctrine requires that "the defendant personally harbored the mental state of malice'" during the commission of a provocative act. (*People v. Swanson* (2020) 57 Cal.App.5th 604, 613 (*Swanson*); *People v. Bell* (2020) 48 Cal.App.5th 1, 14.) The doctrine specifically contemplates implied malice, which is defined as the commission of an act likely to cause death with a conscious disregard for life. (*Swanson*, *supra*, 57 Cal.App.5th at p. 613.)

The requirement of implied malice stands in marked contrast to what is required under the natural and probable consequences doctrine, which arises when "'"a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted."'" (*People v. Chiu* (2014) 59 Cal.4th 155, 162 (*Chiu*); see *People v. Lee* (2020) 49 Cal.App.5th 254, 261 [the natural and probable consequences doctrine is not an implied malice theory].)

21

The requirement that *each* defendant engage in a provocative act with implied malice can be found in the versions of CALJIC No. 8.12 given to the jury in this case.[11] In other words, assuming the jury relied on this theory to convict both defendants of second degree murder, the jury was required to find that Swain and Stroud each deliberately engaged in a provocative act "with knowledge of the danger to, and with conscious disregard for human life."

In light of these instructions, the jury could not impose murder liability as Swain suggests on appeal, namely, by using provocative acts of another co-felon to impose liability on Swain even if he did not engage in his own provocative conduct. (Compare *Mai*, *supra*, 22 Cal.App.4th at pp. 127–128, fn. 9; *Taylor v. Superior Court* (1970) 3 Cal.3d 578, 583, overruled in *People v. Antick* (1975) 15 Cal.3d 79; *In re Joe R.* (1980) 27 Cal.3d 496, 504; *People v. Johnson* (2013) 221 Cal.App.4th 623, 631; *People v. Garcia* (1999) 69 Cal.App.4th 1324.)

We also reject Swain's alternative contention that a portion of CALJIC No. 8.12 created a "subspecies" of the natural and probable consequences doctrine. Swain focuses on an isolated portion of the instructions defining "provocative act," which requires, inter alia, an

---

[11] One clause in the jury instructions as to Swain had a typographical error in that it stated that "a the defendant [*sic*] also committed an intentional provocative act." This potential ambiguity with respect to who was required to perform a provocative act was cured by the subsequent clause in the same instruction requiring that "*[t]he defendant's* commission of the intentional provocative act was a cause of" Hobbs' death. (Italics added.) This error in the instruction as to Swain does not appear in the instruction given as to Stroud.

intentional act, the "natural consequences" of which "were dangerous to human life." But this portion of the instruction required the commission of an "act"; it did not identify a target crime on which the natural and probable consequences theory could be predicated. (*Chiu, supra*, 59 Cal.4th at p. 162.) Because the instruction never identified a target crime, the "natural consequences" language "[did] not transform [Swain's] conviction into one for murder under the natural and probable consequences doctrine." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1059.)

> D. *Omitting the Provocative Act Doctrine from Section 1170.95 Does Not Violate Equal Protection Principles*

Anticipating our conclusion above, Swain contends that if section 1170.95 applies to the natural and probable consequences doctrine and not to the provocative act doctrine, the resentencing provision violates equal protection principles. We disagree.

""The concept of the equal protection of the laws compels recognition . . . that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." [Citation.] 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) "Where two or more groups are properly distinguishable for purposes of the challenged

law, it is immaterial if they are indistinguishable in other respects." (*People v. Barrett* (2012) 54 Cal.4th 1081, 1107.)

Even assuming both defendants in this case were convicted under the provocative act doctrine (they were not), they are not similarly situated to persons convicted of felony murder or murder under the natural and probable consequences doctrine. As we have discussed, provocative act murder requires proof that both defendants personally harbored malice. (*People v. Johnson* (2020) 57 Cal.App.5th 257, 271.)

Even under the provocative act doctrine, both defendants were convicted of second degree murder based on theories of liability that remained valid following the enactment of S.B. 1437. In light of these valid theories, Swain and Stroud have not shown that they could not be convicted of first or second degree murder because of changes to section 188 or 189. (§ 1170.95, subds. (a)(3), (c).) Therefore, the trial court did not err in summarily denying both petitions.

### 4. *Asserted Constitutional Error*

Swain asserts that the court's summary denial of his petition without holding a hearing violated his constitutional rights to due process and the assistance of counsel.

Notwithstanding the fact that Swain's right to the assistance of counsel was not implicated by section 1170.95 (*People v. Perez* (2018) 4 Cal.5th 1055, 1064; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156; see *Dillon v. United States* (2010) 560 U.S. 817, 828), he has not demonstrated how that right was infringed. The trial court appointed him counsel and considered additional briefing by counsel.

24

Similarly, Swain has not demonstrated how a hearing was mandated under principles of due process at this stage of the proceedings.[12] (See *People v. Smith* (2015) 61 Cal.4th 18, 39.) Section 1170.95 clearly sets forth the procedures by which a trial court considers a petition for resentencing and schedules a hearing. Because Swain did not make a prima facie showing that he came within the provisions of section 1170.95, the trial court was not required to issue an order to show cause or schedule a hearing. (See § 1170.95, subds. (c), (d)(1).)

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.

_____

[12]    The cases on which Swain has relied are inapposite. (See *People v. Rouse* (2016) 245 Cal.App.4th 292, 300 ["due process concerns" warrant appointment of counsel after stating a prima facie case for relief]; *Zinermon v. Burch* (1990) 494 U.S. 113, 127 [due process generally requires a hearing before the deprivation of one's liberty or property].)