Filed 10/1/24  P. v. Gonzalez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PERLA GONZALEZ,<br><br>    Defendant and Appellant. | D082156<br><br><br><br>(Super. Ct. No. FVA024527) |

APPEAL from an order of the Superior Court of San Bernardino, Michael A. Knish, Judge.  Request for judicial notice granted.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel, Seth M. Friedman and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Perla Gonzalez appeals from an order denying her Penal Code[1] section 1172.6 petition at the prima facie stage. In 2007, she was convicted of first degree murder under the provocative act doctrine. Relying on a recent case from the Second Appellate District, Division One, *People v. Lee* (2023) 95 Cal.App.5th 1164 (*Lee*), she argues the superior court erred in finding her ineligible for relief because she was convicted of provocative act murder at a time when the law was unclear as to whether accomplices of the provocateur needed to personally harbor malice aforethought in order to be liable for murder.

We reject her argument because the jury instructions given in her case establish that she was prosecuted as the provocateur, not an accomplice of the provocateur, and the law has long been clear that provocateurs must act with malice in order to be convicted of murder. Indeed, the provocative act murder instruction in this case required the jury to find that *Gonzalez* committed a provocative act with implied malice. Because there is no possibility that malice was imputed to her, her conviction remains valid under current law.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Gonzalez's brother had a volatile relationship with his girlfriend's estranged husband, Roberto Canas–Fuentes (Canas). Gonzalez recruited her own boyfriend, Fernando Morales, to assault Canas. The couple waited for Canas in Gonzalez's car. When he arrived, Morales got his attention and began punching him. Canas fought back, then Morales pulled out a knife

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    Both parties reference the factual background set forth in the Supreme Court's opinion from Gonzalez's direct appeal (*People v. Gonzalez* (2012) 54 Cal.4th 643 (*Gonzalez*)) for context only. We will do the same.

2

and stabbed him in the face. Canas managed to knock Morales to the ground, then Gonzalez grabbed a rifle from her car, cocked it, and handed it to Morales. Canas ran at Morales from behind and they began struggling over the rifle. It discharged several times, striking Canas in the hand, bicep, and thigh. When Canas gained control of the rifle, he fatally shot Morales in the chest and abdomen. (*Gonzalez*, *supra*, 54 Cal.4th at pp. 649–651.)

The prosecution charged Gonzalez with the attempted murder of Canas (§§ 664, 187, subd. (a), count 1) and the murder of Morales (§ 187, subd. (a), count 2). It further alleged that the attempted murder was committed with premeditation and deliberation (§ 664, subd. (a)) and that she personally used and discharged a firearm in the commission of that offense (§ 12022.53, subds. (b) & (c)). In 2007, a jury convicted Gonzalez of attempted premeditated murder and first degree murder. It found true that she personally used a firearm, but not true that she personally discharged a firearm. The trial court sentenced her to 25 years to life for the first degree murder. It imposed life with the possibility of parole for the attempted premeditated murder and 10 years for the firearm enhancement, both to run concurrently.

This court affirmed the judgment on direct appeal. (*People v. Gonzalez* (2010) 190 Cal.App.4th 968, review granted Mar. 23, 2011, S189856.) The Supreme Court then granted review on two of the several issues addressed in our opinion: (1) whether there was sufficient evidence to convict Gonzalez of provocative act murder and (2) whether an error in instructing the jury on how to determine the degree of the murder was harmless beyond a reasonable doubt. (*Gonzalez*, *supra*, 54 Cal.4th at p. 652.) The Supreme Court ultimately answered "yes" to both questions and affirmed. (*Ibid.*)

3

In 2019, Gonzalez filed a petition for resentencing pursuant to former section 1170.95 (since renumbered as 1172.6). She claimed that she was convicted of first degree murder under a natural and probable consequences theory and that she could not be convicted of murder under current law because of changes to sections 188 or 189 made effective January 1, 2019.

Her petition remained pending in the superior court for several years. In April 2023, the court held a hearing and decided that she failed to make a prima facie case for relief. Specifically, the court found she was ineligible for relief because she was convicted of provocative act murder.

## DISCUSSION

Gonzalez contends the superior court erred in deeming her ineligible for relief under section 1172.6. Relying on *Lee*, *supra*, 95 Cal.App.5th 1164, she argues that she was convicted of provocative act murder at a time when the law did not necessarily require the jury to find that she personally harbored malice. Thus, she argues her murder conviction could be based on imputed malice. To the contrary, the jury instructions given in her case show that the jury found *she* personally committed a provocative act with implied malice. Since her conviction remains valid following the changes in the law, we agree she is ineligible for section 1172.6 relief.

The Legislature enacted Senate Bill No. 1437 "to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) To achieve this purpose, the legislation amended section 189 effective January 1, 2019 to limit the felony murder doctrine to those who were the actual killer, intended to kill, or were a major participant in the underlying felony and acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3; see § 189, subd. (e).) More relevant here, it also amended section 188 to state that, outside the felony murder

4

context, a person must act with malice in order to be guilty of murder. "Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; see § 188, subd. (a)(3).) This change to section 188 eliminated murder liability under the natural and probable consequences doctrine. (*People v. Lewis* (2023) 11 Cal.5th 952, 957 (*Lewis*).)

Senate Bill No. 1437 added former section 1170.95 to the Penal Code to create a petition process allowing defendants convicted of felony murder or murder under the natural and probable consequences doctrine to seek resentencing. (Stats. 2018, ch. 1015, § 4.) Effective January 1, 2022, Senate Bill No. 775 extended this petition process to defendants convicted of murder under any theory in which malice was imputed to them based solely on their participation in a crime, as well as attempted murder under the natural and probable consequences doctrine and manslaughter. (Stats. 2021, ch. 551, § 2.) As mentioned above, section 1170.95 was then renumbered as section 1172.6 with no substantive changes. (Stats. 2022, ch. 58, § 10.)

When a trial court reviews a petition for resentencing under section 1172.6, it must first decide if the petitioner has established a prima facie case for relief under the statute. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court accepts the allegations as true and determines whether the petitioner would be entitled to relief if he or she proves the allegations. (*Ibid*.) In making its evaluation, the court may review the record of conviction—including the charging documents, jury instructions, verdicts, and to a limited extent any prior appellate opinion—to determine if the petitioner's allegations are conclusively rebutted by the record. (*Id*. at p. 972; *People v. Strong* (2022)

5

13 Cal.5th 698, 708.) But the court may not engage in factfinding and weighing credibility at the prima facie stage of review. (*Lewis*, at p. 971.)[3]

"One of the requirements for the prima facie showing is that the petitioner 'could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189' made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) Accordingly, a court may deny the petition at the prima facie stage if the record of conviction conclusively establishes that the petitioner was convicted on a theory not affected by Senate Bill No. 1437." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931.) "A court's decision to deny a resentencing petition at the prima facie stage ' "is a purely legal conclusion, which we review de novo." ' " (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.)

Here, the superior court found Gonzalez was ineligible for relief as a matter of law because she was convicted of murder under the provocative act doctrine. The jury instructions confirm this was the only theory of murder presented to the jury. "A variation on the law of transferred intent, the provocative act doctrine holds the perpetrator of a violent crime vicariously liable for the killing of an accomplice by a third party, usually the intended victim or a police officer." (*Gonzalez, supra*, 54 Cal.4th at p. 654.) " 'In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.' " (*Id*. at p. 655.)

"A murder conviction under the provocative act doctrine thus requires proof that the defendant personally harbored the mental state of malice,

---

[3]    We granted the Attorney General's unopposed request for judicial notice of the record from Gonzalez's direct appeal. (Evid. Code, §§ 452, subd. (d) & 459.) We have focused on the jury instructions and verdict forms.

and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing." (*Gonzalez*, *supra*, 54 Cal.4th at p. 655.) "A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response." (*Ibid*.) "Although the doctrine has often been invoked in cases where the defendant initiates or participates in a gun battle, it is not limited to this factual scenario. Malice will be implied if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger." (*Ibid.*, internal citations omitted.)

Since the provocative act doctrine requires the defendant to personally harbor malice (*Gonzalez*, *supra*, 54 Cal.4th at p. 655), defendants convicted of murder under this theory have been deemed ineligible for relief under section 1172.6. (See, e.g., *People v. Flores* (2023) 96 Cal.App.5th 1164, 1172 ["Since the law has always required a defendant who committed a provocative act personally harbor malice and still does, Flores fails to satisfy the condition for relief that he 'could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019' "]; *People v. Antonelli* (2023) 93 Cal.App.5th 712, 715 ["Because appellant was convicted of provocative act murder, as a matter of law he is not eligible for section 1172.6 relief"], review granted Oct. 18, 2023, S281599.)

In *Lee*, however, the Court of Appeal traced the history of the provocative act doctrine and determined that the case law was initially unclear as to whether *an accomplice of the provocateur* needed to personally harbor malice. (*Lee, supra*, 95 Cal.App.5th at pp. 1175, 1182.) The *Lee* court identified *People v. Washington* (1965) 62 Cal.2d 777 (*Washington*) and *People v. Gilbert* (1965) 63 Cal.2d 690 (*Gilbert*) as the twin origins of the

7

doctrine.  (*Lee*, at p. 1175.)  In *Washington*, the Supreme Court pronounced that when a victim kills an accomplice during a felony, the felony murder doctrine does not apply because the killing was not committed to perpetrate the felony, but rather to thwart it.  (*Washington*, at p. 781.)  Nevertheless, when a " 'defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death' "—such as initiating a gun battle—they may be "found guilty of murder if their victims resist and kill."  (*Id*. at p. 782.)

In *Gilbert*, the Supreme Court further defined this theory of liability.  Most significantly, the *Gilbert* court explained:  "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder.  In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life."  (63 Cal.2d at pp. 704–705.)  In this context, the court also reiterated that "[u]nder the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice" provided the accomplice was acting "in furtherance of the common design."  (*Id*. at p. 705.)

The *Lee* court read this passage from *Gilbert* as permitting a "nonprovocateur" defendant to be convicted of murder based on "the malicious and provocative acts of his confederates, without a showing that the defendant himself harbored malice."  (*Lee*, *supra*, 95 Cal.App.5th at pp. 1177–1178.)  *Lee* highlighted some cases that, in its view, seemed to adopt a similar reading over the next few decades.  (See, e.g., *People v. Taylor* (1974) 12 Cal.3d 686, 691 [getaway driver could be convicted of murder

8

"on a theory of vicarious liability if it independently appeared that his confederates entertained malice aforethought"]; *People v. Mai* (1994) 22 Cal.App.4th 117, 125 ["it is a life-endangering act by a defendant or surviving cofelon that supplies the requisite implied malice to support a murder conviction"].)

To the *Lee* court, it was not until the Supreme Court decided *People v. Concha* (2009) 47 Cal.4th 653 (*Concha*) that it became clear that the mental states of the defendants in provocative act murder cases—whether they were the provocateur or a nonprovocateur accomplice—need to be examined individually. (*Lee, supra*, 95 Cal.App.5th at pp. 1180, 1182.) In *Concha*, the issue was "whether a defendant may be liable for first degree murder when his accomplice is killed by the intended victim in the course of an attempted murder." (*Concha*, at p. 658.) The court held "that a defendant may be convicted of first degree murder under these circumstances if the defendant personally acted willfully, deliberately, and with premeditation during the attempted murder." (*Ibid*.) In so holding, the court observed that "[w]hile joint participants involved in proximately causing a murder ' "are tied to a 'single and common *actus reus*,' 'the individual *mentes reae* or levels of guilt of the joint participants are permitted to float free and are not tied to each other in any way. If their *mentes reae* are different, their independent levels of guilt . . . will necessarily be different as well.' " ' " (*Id*. at p. 662.)

" '[I]n the classic provocative act murder prosecution, *malice is implied* from the provocative act, and the resulting crime is murder in the second degree.' " (*Concha, supra*, 47 Cal.4th at pp. 662–663.) However, when "the individual defendant personally intends to kill and acts with that intent willfully, deliberately, and with premeditation, the defendant may be liable for first degree murder for each unlawful killing proximately caused by his or

9

her acts, including a provocative act murder." (*Id*. at pp. 663–664.) "Once liability for murder is established in a provocative act murder case or in any other murder case, the degree of murder liability is determined by examining the defendant's personal mens rea and applying section 189." (*Concha,* at p. 663.)

Because the defendant in *Lee* was convicted of provocative act murder in 1994, well before *Concha*, the court opined it was possible that the jury found him guilty "not based on his own malicious conduct, but on that of a surviving co-perpetrator." (*Lee, supra*, 95 Cal.App.5th at pp. 1182–1183.)[4] Indeed, the jury in his case was instructed that it could find him guilty of provocative act murder if: " '1. The crime of robbery was committed; [¶] 2. During the commission of such crime, defendant *or another surviving perpetrator* also intentionally committed a provocative life-threatening act which act was not necessary to the commission of the robbery; [¶] 3. *The provocative life-threatening act was deliberately performed with knowledge of the danger to and with conscious disregard for human life*; and [¶] 4. Such act was sufficiently provocative and life threatening that another person not a perpetrator of the crime of robbery in a reasonable response thereto killed a perpetrator of such crime, and [¶] 5. The provocative life-threatening act was a proximate cause of the accomplice's death.' " (*Id*. at pp. 1182–1183, italics added.)

---

4    There were three cohorts in *Lee*. Lee and Woo robbed a video store. As they fled, Lee and the getaway driver, Choi, pointed their guns at a security guard. When Lee and Woo got into the car, Choi fired a shot at the guard. The guard shot back, killing Choi. (*Lee, supra*, 95 Cal.App.5th at p. 1170.)

10

As this instruction did not require the jury to find that Lee personally acted with malice, it was possible that the jury imputed malice to him based solely on his participation in the robbery. (*Lee, supra*, 95 Cal.App.5th at p. 1183.) And since the imputation of malice is no longer permitted under section 188, as amended by Senate Bill No. 1437, the *Lee* court concluded that the defendant made a prima facie case for relief. (*Ibid*.)

Even if we assume, without deciding, that *Lee* correctly determined the law was unclear before *Concha* as to whether *nonprovocateur accomplices* were required to personally harbor malice, that ambiguity is not implicated here. To be sure, Gonzalez was tried in 2007, before *Concha*. But the jury instructions in her case establish that she was prosecuted as *the provocateur*, and the law has long been clear that the provocateur must act with at least implied malice. (See, e.g., *People v. Cervantes* (2001) 26 Cal.4th 860, 872, fn. 15 ["In the classic provocative act murder prosecution, *malice is implied* from the provocative act"]; *Gilbert, supra*, 63 Cal.2d at p. 704 [in such cases, "the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life"]; see also *Lee, supra*, 95 Cal.App.5th at p. 1182 ["[U]ntil *Concha* . . . the case law imposed culpability on all perpetrators of the underlying crime so long as *the provocateur acted with malice*, and did so in furtherance of the common criminal design" (italics added)].)

The trial court in Gonzalez's case instructed the jury with CALCRIM No. 560 (Provocative Act by Defendant) *not* CALCRIM No. 561 (Provocative Act by Accomplice). Unlike the instructions in *Lee*—which allowed the jurors to find that the "defendant or another surviving perpetrator" was the provocateur and merely asked if *the provocateur* acted with implied malice— the instructions in this case permitted the jury to convict Gonzalez of murder

11

only if they found both that she (1) was the provocateur *and* (2) acted with implied malice. In critical part, the instruction stated:

> "To prove that the defendant is guilty of murder under the provocative act doctrine, the People must prove that:
>
> "1. In committing or attempting to commit an Assault Likely to Produce Great Bodily Injury or Assault with a Firearm, *the defendant* intentionally did a provocative act;
>
> "2. *The defendant* knew that the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life;
>
> "3. In response to the defendant's provocative act, Roberto Canas killed Fernando Morales[;]
>
> "AND
>
> "4. Fernando Morales' death was the natural and probable consequence of the defendant's provocative act." (See CALCRIM No. 560, italics added.)

Accordingly, in convicting Gonzalez of murder, the jury necessarily found that she intentionally committed a provocative act, knew that the act was dangerous to human life, and acted with conscious disregard for life. (See *Gonzalez, supra,* 54 Cal.4th at p. 653 ["Malice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses."].) Because the jury necessarily found that she personally acted with implied malice, her murder conviction remains valid despite the changes wrought by Senate Bill No. 1437. She cannot make a prima facie case for section 1172.6 relief.

12

Gonzalez shifts gears in her reply brief and suggests the jury might have convicted her of murder under the natural and probable consequences doctrine. Her argument stems from one sentence in the portion of the CALCRIM No. 560 instruction defining a "provocative act" for the jury:

> "A *provocative act* is an act:
>
> "1. That which goes beyond what is necessary to accomplish the Assault Likely to Produce Great Bodily Injury or Assault with a Firearm[;]
>
> "2. Whose natural and probable consequences are dangerous to human life, because there is a high probability that the act will provoke a deadly response.
>
> "**The crime of Attempted Murder *itself* may be a provocative act; no underlying crime is required.**" (Boldface added.)[5]

Because of this bolded sentence, Gonzalez argues that the jury could have turned to the instructions on the attempted murder count, which included an instruction on the natural and probable consequences doctrine. In relevant part, instruction CALCRIM No. 403 provided as follows:

> "To prove that the defendant is guilty of Attempted Murder or the lesser Attempted Voluntary Manslaughter by aiding and abetting, the People must prove that:
>
> "1. The defendant is guilty of Assault Likely to Produce Great Bodily Injury or Assault with a Firearm;
>
> "2. During the commission of the Assault Likely to Produce Great Bodily Injury or Assault with a Firearm, the crime of Attempted Murder or the lesser Attempted Voluntary Manslaughter was committed;

---

5    This language does not appear in the pattern instruction. However, the bench notes to CALCRIM No. 560 reference *In re Aurelio R.* (1985) 167 Cal.App.3d 52, which held that "no separate and independent 'provocative act' need be" proven when the underlying felony inherently involves malice, such as attempted murder. (*Id.* at pp. 59–60.)

13

"AND

"3.  Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the Attempted Murder or the lesser Attempted Voluntary Manslaughter was a natural and probable consequence of the commission of the Assault Likely to Produce Great Bodily Injury or Assault with a Firearm."

Considering these instructions together, Gonzalez contends the jury could have found that she "aided and abetted an assault which . . . led to attempted murder as a natural and probable consequence, which itself was a provocative act sufficient to establish murder liability without ever finding [that she] harbored malice." Accordingly, she argues, the provocative act murder instruction "incorporated the natural and probable consequences doctrine which is no longer valid under current law."

Gonzalez forfeited this argument by failing to raise it in her opening brief. (See *People v. Rangel* (2016) 62 Cal.4th 1192, 1218 [" 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief' "].)  Moreover, to the extent Gonzalez suggests that *her* murder liability could rest solely on *Morales'*s provocative conduct, this was not a valid theory even at the time of her trial. Since a person cannot be guilty of murder in connection with their own death, it is not permissible to hold a defendant vicariously liable for the provocative acts of their deceased accomplice. (*People v. Antick* (1975) 15 Cal.3d 79, 91–92 & fn. 12; *Gonzalez*, *supra*, 54 Cal.4th at p. 659.)  The CALCRIM No. 560 instruction otherwise made clear that Gonzalez's liability for the murder depended on whether *she* committed a provocative act with implied malice. If the added language of the instruction was confusing in this regard, an instructional error argument might have been raised on direct appeal. It does not, however, make her

14

eligible for relief under section 1172.6.  (See *People v. Burns* (2023) 95 Cal.App.5th 862, 865 ["Section 1172.6 does not create a right to a second appeal, and [defendants] cannot use it to resurrect a claim that should have been raised in [their] direct appeal"].)

## DISPOSITION

The order denying the petition for resentencing is affirmed.[6]

DATO, Acting P. J.

WE CONCUR:

KELETY, J.

RUBIN, J.

---

[6]     Since Senate Bill No. 775 extended the petition process to defendants convicted of attempted murder under the natural and probable consequences doctrine, Gonzalez contends that she could pursue resentencing on her attempted murder conviction, since the jury in her case was instructed on the natural and probable consequences doctrine as to that count.  We affirm the order denying her petition on the murder count without prejudice to her filing a petition on the attempted murder count.  We express no opinion on the potential merits of any such petition.